UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH PICHLER, KATHLEEN KELLY, RUSSELL CHRISTIAN, DEBORAH BROWN, SETH NYE, HOLLY MARSTON, KEVIN QUINN, JOSE L. SABASTRO, DEBORAH A. SABASTRO, THOMAS RILEY, AMY RILEY, RUSSELL DAUBERT and CARRI DAUBERT, on behalf of themselves and those similarly situated, : : : : : : : : : : Plaintiffs, : v. : : UNITE (UNION OF NEEDLETRADES, INDUSTRIAL & TEXTILE EMPLOYEES AFL-CIO), a New York unincorporated association; BRUCE RAYNOR, a New York resident; INTERNATIONAL BROTHERHOOD OF TEAMSTERS AFL-CIO; and DOES 1-10, : : : : : : : : : : Defendants. : | CIVIL ACTION NO. 04-CV-02841 |

## ORDER

AND NOW, this ___ day of _____, 2004, upon consideration of the Motion of Defendants, UNITE and Bruce Raynor, to Dismiss the Amended Complaint, and Plaintiffs' response thereto, it is hereby **ORDERED** that said Motion is **DENIED.**

_____
Stewart Dalzell, U.S.D.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH PICHLER, KATHLEEN KELLY, RUSSELL CHRISTIAN, DEBORAH BROWN, SETH NYE, HOLLY MARSTON, KEVIN QUINN, JOSE L. SABASTRO, DEBORAH A. SABASTRO, THOMAS RILEY, AMY RILEY, RUSSELL DAUBERT and CARRI DAUBERT, on behalf of themselves and those similarly situated,<br><br>          Plaintiffs,<br>v.<br><br>UNITE (UNION OF NEEDLETRADES, INDUSTRIAL & TEXTILE EMPLOYEES AFL-CIO), a New York unincorporated association; BRUCE RAYNOR, a New York resident; INTERNATIONAL BROTHERHOOD OF TEAMSTERS AFL-CIO; and DOES 1-10,<br><br>          Defendants. | CIVIL ACTION NO. 04-CV-02841 |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION OF DEFENDANTS, UNITE AND BRUCE
RAYNOR, TO DISMISS THE AMENDED COMPLAINT

I.    **INTRODUCTION AND BRIEF STATEMENT OF FACTS**

In 1993, Congress passed the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, "to prevent state motor vehicle departments from freely providing personal information from motor vehicle records." *Margan v. Niles*, 250 F. Supp. 2d 63, 68 (N.D.N.Y. 2003). The DPPA makes it "unlawful for any person knowingly to obtain . . . personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of the

1

[statute]." 18 U.S.C. § 2722(a).[1] Section 2724(a) provides a private cause of action to individuals whose personal information is obtained in violation of the statute:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a). The statute authorizes actual (minimum of $2,500) and punitive damages, awards of attorney's fees and costs, and equitable relief if a violation is proved. 18 U.S.C. § 2724(b). *See generally Reno v. Condon*, 528 U.S. 141, 143-47 (2000) (outlining DPPA regulatory scheme).

Plaintiffs Elizabeth Pichler, Kathleen Kelly, Russell Christian, Deborah Brown, Seth Nye, Holly Marston, Kevin Quinn, Jose L. Sabastro, Deborah A. Sabastro, Thomas Riley, Amy Riley, Russell Daubert and Carri Daubert (collectively "Plaintiffs"), on behalf of themselves and a class of those similarly situated, have sued Defendants UNITE (Union of Needletrades, Industrial & Textile Employees AFL-CIO) ("UNITE"), UNITE's President, Bruce Raynor ("Raynor"), and the International Brotherhood of Teamsters AFL-CIO ("Teamsters") (collectively "Defendants") under the DPPA for obtaining their personal information – *i.e.*, their home addresses – from the Pennsylvania Department of Motor Vehicles. (Amended Class Action Complaint ("Amended Complaint"), ¶ 43). Plaintiffs allege that Defendants obtained this personal information "for purposes not permitted by the DPPA," and seek actual and punitive damages as well as an injunction preventing Defendants from committing future DPPA violations. (Amended Complaint, ¶ 65 and Prayer).

In their motion to dismiss, Defendants do not deny that they obtained Plaintiffs' personal information through their motor vehicle records, but rather argue that Defendants are exempted

---

[1] Section 2721(b) lists fourteen "permissible uses." 18 U.S.C. § 2721(b).

from liability under the DPPA because they were collecting Plaintiffs' license plate numbers and obtaining Plaintiffs' home addresses as part of an effort to unionize Cintas Corporation's ("Cintas") employees. Although only some of the named Plaintiffs whose personal information Defendants obtained are Cintas employees – Plaintiffs Russell Christian, Holly Marston, Deborah A. Sabastro, Amy Riley, and Carri Daubert are not now and never have been employed by Cintas (Amended Complaint, ¶ 23) – Defendants nevertheless contend they are immunized from civil liability because their acts, regardless of whom they harmed, were committed during a labor-organizing campaign. The DPPA, however, makes no exception for labor organizers or unions. Moreover, the United States Supreme Court and every other federal court confronted with such an argument have refused to allow labor organizations to hide behind the labor laws to avoid liability for tortious conduct, especially where that conduct is independently proscribed by federal statute. This case is no exception.

Defendants also argue that the Norris-LaGuardia Act, a statute intended by Congress to prevent federal courts from enjoining strikes, divests this Court of jurisdiction to enjoin Defendants from violating the DPPA. The Norris-LaGuardia Act, however, applies only to "labor disputes." This case, in which Plaintiffs seek to enforce their statutory right to privacy and to be free from harassment, is not a "labor dispute."

Finally, Defendants argue that Plaintiffs' claim must be dismissed because it is not pleaded with specificity. Under the Federal Rules of Civil Procedure, however, only claims sounding in fraud must be pleaded with specificity. Plaintiffs' DPPA claim does not sound in fraud and thus is well-pleaded under the Federal Rule of Civil Procedure 8 standard.[2]

---

[2] Defendant Teamsters filed a motion to dismiss that is separate from that of Defendants UNITE and Raynor, although each supporting memorandum incorporated the other's arguments by reference. Plaintiffs will do the same here. This brief will address UNITE's and Raynor's

II. **LEGAL ARGUMENT**

A. <u>**The Doctrine Of Primary Jurisdiction Does Not Apply To Plaintiffs' Claim.**</u>

Defendants' primary argument in support of their motion to dismiss is that Plaintiffs' DPPA claim is pre-empted by the National Labor Relations Act ("NLRA") and should be dismissed because it encroaches on the primary jurisdiction of the National Labor Relations Board ("NLRB") to regulate union organizing activity. (Memorandum of Law in Support of Motion of Defendants UNITE and Bruce Raynor to Dismiss the Amended Complaint ("Memo") at 10-20). Defendants' argument demonstrates a complete misunderstanding of the law.

1) <u>**The NLRA, *Garmon*, and the Doctrine Of Primary Jurisdiction.**</u>

Sections 7 and 8 of the National Labor Relations Act ("NLRA") protect certain labor practices (*e.g.*, organizing or joining a labor union, collective bargaining, or engaging in concerted activity), and prohibit both unions and employers from engaging in certain unfair labor practices (*e.g.*, interfering with a protected activity or coercing employees to join a union). *See generally*, 29 U.S.C. §§ 157, 158. To assure uniformity in the nation's labor laws, and to make use of the NLRB's expertise in the area of labor relations, the Supreme Court established the *Garmon* doctrine, which requires that "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959).

The *Garmon* doctrine is a hybrid of doctrines of preemption and primary jurisdiction. It is a doctrine of preemption to the extent that it presumptively preempts – *i.e.*, prohibits plaintiffs

---

arguments. Plaintiffs are filing a separate memorandum addressing the Teamsters' motion, but they incorporate that separately-filed memorandum herein by reference.

from bringing – state-law claims that "concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983). It is a doctrine of primary jurisdiction to the extent it requires the NLRB – rather than state or federal courts – to hear those claims. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004) ("*Garmon* is more than a traditional preemption doctrine . . . because when properly invoked it tells us not just what law applies (federal law, not state law) but who applies it (the National Labor Relations Board, not the state courts or federal district courts)"). *Cf. Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004) ("Applied to claims in federal court, and arising under federal law, *Garmon* has nothing to do with either preemption or subject-matter jurisdiction. It is a rule of primary jurisdiction, allocating to an administrative agency the first crack at certain matters.").

### 2) The *Garmon* Doctrine does not apply to federal statutes like the DPPA.

Although the 45 years since *Garmon* has seen anything but a uniform application of its holding, courts are in agreement on at least one issue: the *Garmon* doctrine "is inapplicable when the NLRA potentially conflicts with another federal statute." *Smith v. National Steel & Shipbuilding Co.*, 125 F.3d 751, 755 (9th Cir. 1997). *See, e.g., International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 240-41 (1971) (district court may hear claim for violation of Labor-Management Reporting and Disclosures Act even though conduct arguably was an unfair labor practice); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d at 611 (NLRA did not preempt RICO claim that alleged violation of Immigration and Nationality Act as predicate offense); *Baker*, 357 F.3d at 688-90 (holding that "[w]hen the predicate offenses of a particular claim under RICO are federal crimes other than transgressions of the labor laws, no dispute falls within the [NLRB's] primary jurisdiction, even if labor relations turn out to be implicated in

5

some other fashion"); *Smith*, 125 F.3d at 756-57 (ADA claim not preempted by NLRA; "we find little reason why *Garmon* should be extended to cover cases involving the overlap of two federal statutes, and preclude the enforcement of a federal act which expressly prescribes the conduct alleged by a plaintiff"); *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1447 (5th Cir. 1992) (ADEA not preempted by NLRA); *United States v. International Brotherhood of Teamsters*, 948 F.2d 98, 105 (2d Cir. 1991) (claim under All Writs Act not preempted; "where federal laws and policies other than the NLRA are implicated, the *Garmon* rule is frequently considered inapplicable").

The only exception to this rule is where proof of the federal claim depends upon proof of an NLRA violation. In such situations, courts hold that the NLRB has exclusive jurisdiction over the case. So, for example, in *Tamburello v. Comm-Tract Corp.*, 67 F.3d 973 (1st Cir. 1995), the First Circuit held that where a plaintiff's RICO claim "hinges upon a determination of whether an unfair labor practice has occurred," that claim is "subject to the primary jurisdiction of the NLRB." *Id.* at 979. Similarly, in *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, (7th Cir. 1992), the Seventh Circuit held that the NLRA preempts a RICO claim when "the underlying conduct of the plaintiffs' RICO claim is wrongful only by virtue of the labor laws." *Id.* at 662. *Contrast Trollinger*, 370 F.3d at 611 (no preemption where "[RICO] plaintiffs do not need to prove a violation of the NLRA in order to establish violations of the federal-law predicate upon which they rely").

The Third Circuit ruling cited by Defendants, *United States v. Boffa*, 688 F.2d 919 (3d Cir. 1982), is illustrative of this point. In *Boffa*, defendants were tried and convicted under the federal RICO statute. The indictment alleged that defendants committed the predicate act of mail fraud, 18 U.S.C. § 1341, by using the mails to deprive their employees of "rights guaranteed

6

by section 7 of the NLRA," *i.e.*, the right "to self-organization, to form, join and assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining and other mutual aid and protection." *Id.* at 927. The Third Circuit held this was not a valid allegation because proving the mail fraud required proving an unfair labor practice – "precisely the type of purely statutory questions that Congress intended only the [NLRB] to resolve." *Id.* at 929.

In contrast, the Government also alleged that defendants in *Boffa* committed mail fraud, not only by using the mails to deprive employees of rights guaranteed by the NLRA, but also by using the mails to deprive them of contractual rights they had under a collective bargaining agreement and to deprive them of the "loyal, faithful, and honest services" of the president of their union. *Id.* at 930. Defendants argued on appeal, similar to Defendants' argument in the case at bar, that "because [these] mail fraud allegations pertain to activities that at least arguably constitute unfair labor practices," they "must be dismissed under the doctrine of primary jurisdiction of the NLRB." *Id.* at 931. The Third Circuit, in no uncertain terms, disagreed: "Assuming, without deciding, that [defendants'] conduct is at least arguably prohibited by section 8 of the NLRA, we decline to accept the proposition that the NLRA precludes the enforcement of a federal statute <u>that independently proscribes that conduct as well</u>." *Id.* (emphasis added).

As with the mail fraud statute at issue in *Boffa*, the DPPA <u>independently proscribes</u> "knowingly obtain[ing] . . . personal information [] from a motor vehicle record" for a non-permitted use. 18 U.S.C. § 2724(a). Because proving a violation of the DPPA is not dependent on evidence of an NLRA violation, "no dispute falls within the Labor Board's primary

7

jurisdiction, even if labor relations turn out to be implicated in some other fashion." *Baker*, 357 F.3d at 689.

### 3) <u>Unions are not granted immunity from liability for committing torts just because they are unions.</u>

Defendants urge upon this Court the proposition that regardless of whether the *Garmon* doctrine is applicable to their violations of the DPPA, they should be shielded from liability simply because they are unions. The Supreme Court, however, consistently has rejected unions' efforts to use the NLRA to shield themselves from liability for their tortious acts. For example, in *United Construction Workers v. Laburnum Const. Corp.*, 347 U.S. 656 (1954), the plaintiff-employer sued the defendant-union – which had picketed plaintiff's job-site and, through threats of violence, prevented plaintiff's employees from working at the site – for tortious interference. The union argued that even if its conduct was wrongful, the plaintiff's exclusive recourse was to file an unfair labor practice charge with the NLRB. The Supreme Court disagreed, holding:

> . . . Congress has neither provided nor suggested any substitute of the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured [plaintiff] from this right of recovery will deprive it of its property without recourse of compensation. <u>To do so will, in effect, grant [the union] immunity from liability for its tortious conduct</u>. We see no substantial reason for reaching such a result.

*Id.* at 663-64 (emphasis added). *See also Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 207 (1978) (employer may sue union for trespass); *Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 299 (1977) (excluding certain interference claims from *Garmon's* purview, stating "the [NLRB] would lack authority to provide the defamed individual with damages or other relief"); *Linn v. United Plant Guard Workers*, 383 U.S. 53, 61-63 (1966) (permitting a defamation claim to be asserted against a union for statements made during an organizing campaign, noting that the union was not free

from state law restrictions on malicious conduct); *UAW-CIO v. Russell*, 356 U.S. 634, 643 (1958) (allowing an intentional infliction of distress claim to stand because "Congress did not establish a general scheme authorizing the [NLRB] to award full compensatory damages for injuries caused by wrongful conduct").

The same reasoning applies in this case. The DPPA provides Plaintiffs with a procedure for collecting damages for harm caused to them by Defendants' tortious conduct. *See* 18 U.S.C. 2724(b) (providing damage remedy). If this Court were to decide that only the NLRB may hear this claim, it would, "in effect, grant [defendants] immunity from liability for [their] tortious conduct." *Laburnum*, 347 U.S. at 664.

### 4) <u>This case has nothing to do with a labor dispute.</u>

A quick reading of Defendants' motion to dismiss leaves one with the impression that this is a case involving Cintas' attempt to disrupt Defendants' organizing activities. Throughout their motion, Defendants say things like "the Amended Complaint" "echo[es] . . . employer tactics [from] a century ago" (Memo at 1), and "the DPPA . . . should not be construed in a manner that would upset the delicate balance between the employer's private property-based right to bar union organizers from its property and the need of unions for access to the work force." (Memo at 11).

Defendants' hyperbolic arguments and discussions of Cintas and the NLRB are red-herrings. Plaintiffs are not "employers," and their claims do not arise from any dispute between Cintas and Defendants. Plaintiffs are private citizens, some of whom are not even Cintas employees. While Defendants may claim that their conduct was done in the context of an "organizing campaign," that means nothing to Plaintiffs, whose privacy rights have been violated by Defendants' acquisition of their personal information in violation of the DPPA. In essence, Defendants contend that violating a person's privacy rights – even the rights of persons who are

not part of a targeted work force – is necessary collateral damage in the unions' efforts to expand their membership. No administrative body or court has ever so held.

In fact, no administrative body or court has ever held that a union has a <u>right</u> under the NLRA to collect a private individual's private information from motor vehicle records.[3] Nor, of course, has any court held that such a non-existent right trumps an individual's privacy rights under the DPPA.

The only cases cited by Defendants[4] arose in the context of a dispute <u>between a union and an employer</u> as to whether an employer lawfully can bar a union from its premises or withhold from the union a list of its employees' names and addresses. In those cases, the courts/NLRB held that the employer could do so if the union had other methods by which it could access employees, listing license plate tracking as an example. Defendants contend that by mentioning license plate tracking as one such method of information-gathering, these cases implicitly sanction a union's use of that method.

Even if that is a fair interpretation of those decisions (which it is not), they would still have no bearing on this case. None of those decisions addressed the DPPA, acknowledged awareness of the DPPA, or discussed whether a union could use such methods in the wake of the DPPA's restrictions. Nor did any of the decision-makers in those decisions consider whether a

---

[3] As discussed in detail in Plaintiffs' opposition to the Teamsters' motion to dismiss, Congress could have, but did not, include labor-organizing activity as one of the fourteen permissible uses of motor vehicle records.

[4] *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 530 (1992); *Randell Warehouse of Arizona, Inc.*, 328 NLRB 1034 (1999); *Golden Stevedoring, Inc.*, 335 NLRB 410 (2001); *Hutzler Brothers Co.*, 241 NLRB 914, 918 (1979); 1998 NLRB General Counsel Advice Memorandum, 1998 NLRB GCM LEXIS 52. Defendants also cite to the dissenting opinion in *Technology Service Solutions and International Brotherhood of Electrical Workers, AFL-CIO, Local 111*, 2000 WL 1663428 (N.L.R.B. Div. of Judges Oct. 31, 2000).

union's use of that method violated any person's privacy rights, including the rights of non-employees having no relation to the union's organizing effort. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Defendants are not immune from civil liability merely beause they are in the "labor business." When a union engages in conduct independently proscribed by the law, especially by a federal statute, the union is liable for that conduct. Defendants cannot cite any authority which recognizes any right to engage in the conduct at issue in this case. The DPPA, on the other hand, expressly outlaws it. For these reasons, the Court should reject Defendants' plea for wholesale immunity from the DPPA.

### B. The Norris-LaGuardia Act Does Not Apply To This Case.

Defendants also argue that the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.* (the "NLA"), prevents this Court from granting the injunctive relief requested by Plaintiffs.[5] (Memo at 21-22) Section 4 of the NLA provides in part:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing [certain enumerated acts].

29 U.S.C. § 104. "Congress adopted this broad prohibition [in 1932] to remedy the growing tendency of federal courts to enjoin strikes by narrowly construing the Clayton Act's exemption

---

[5] Plaintiffs seek a "preliminary and permanent injunction, enjoing and restraining each of these Defendants . . . from obtaining Plaintiffs' and the class members' personal information, disclosing the information, using the information, contacting them, and visiting their homes, and doing so to others." (Amended Complaint, Prayer at ¶ 5).

from the Sherman Act's prohibition against conspiracies to restrain trade." *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n*, 457 U.S. 702, 708 (1982).

Defendants claim that Plaintiffs' requested injunction will prevent them from engaging in three of the NLA's enumerated acts:

> (d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;
>
> (e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence; and
>
> (i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

(Memo at 21).

By its terms, the NLA applies only to cases involving a "labor dispute,"[6] *i.e.*, cases where "the employer-employee relationship [is] the matrix of the controversy." *Columbia River Packers Ass'n, Inc. v. Hinton*, 315 U.S. 143, 147 (1942). The NLA does not apply to "controversies upon which the employer-employee relationship has no bearing." *Id.* at 146-47.

*Columbia River* involved a dispute between a fish cannery and the union of fisherman from whom the cannery bought fish. The cannery sued the union, arguing that the union violated the antitrust laws by refusing to sell fish to the cannery unless the cannery agreed to purchase fish only from union members. The cannery sought an injunction, but the Court of Appeals dismissed the case under the NLA, "holding that a 'labor dispute' was involved." *Id.* at 144.

---

[6] The NLA defines "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c).

12

The Supreme Court reversed, holding that the "controversy here is altogether between fish sellers and fish buyers," with no connection to an employer-employee relationship. *Id.* at 147.

The instant case is no different from *Columbia River*. No employer is involved in this case, and the dispute does not even remotely concern an employer-employee relationship. Plaintiffs have sued Defendants for violating their privacy rights. Although Defendants claim that their conduct was justified because they are attempting to organize Cintas' employees, that purported justification does not magically transform the "matrix" of this case into a controversy involving an employer-employee relationship. Plaintiffs are not seeking any relief related to their relationship with Cintas. That, of course, is especially true for those Plaintiffs who never have been employed by Cintas. *See* 29 U.S.C. § 113(b) (NLA applies only to "person[s] participating or interested in a labor dispute"). Defendants have not cited any case applying the NLA to a controversy between a union and the employees whom the union seeks to represent, let alone between a union and collaterally-damaged non-employees.

Plaintiffs' lawsuit, which seeks an injunction preventing Defendants from violating their privacy rights under the DPPA, "does not place in controversy . . . [Plaintiffs'] wages or hours or other terms and conditions of employment." *Columbia River*, 315 U.S. at 147. Thus, the NLA does not apply.

In addition, Plaintiffs' requested injunction, if granted, will not infringe on the three protected activities listed in Defendants' brief. First, an injunction will not prevent Defendants from "aiding any person participating or interested in any labor dispute" "[b]y all lawful means" because, by defintition, conduct which violates the DPPA is not a "lawful means." Second, an injunction will not prevent Defendants from "[g]iving publicity to the existence of, or the facts involved in, any labor dispute." Defendants may still publicize a labor dispute in any way that

does not violate the DPPA. Similarly, an injunction will not prevent Defendants from "[a]dvising, urging, or otherwise causing or inducing" protected acts because Defendants still have all *lawful* means to do so available to them.

Finally, even if Defendants are correct that the NLA prevents this Court from issuing Plaintiffs' requested injunctive relief (which they are not), that is no reason for this Court to dismiss Plaintiffs' entire Amended Complaint, which also seeks statutory damages, punitive damages, and attorney fees. Defendants' NLA argument has no bearing on Plaintiffs' damage claim and therefore is not a proper ground for dismissal.

### C. There Is No Heightened Pleading Requirement.

Defendants also argue that because the DPPA is a civil complaint of criminal conduct, Plaintiffs' Amended Complaint must be pleaded with specificity and cannot include allegations based on "information and belief." (Memo at 4-5). Defendants are wrong.

A plaintiff must plead a civil complaint with specificity only when he is alleging a fraud. *See* Fed. R. Civ. P. 9(b). Thus, for example, when a plaintiff brings a RICO claim and alleges that the defendant committed a predicate act of fraud, the plaintiff must plead that fraud with specificity. *See, e.g., Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule 9(b) to allegations of mail fraud as RICO predicate acts); *Flowers v. Continental Grain Co.*, 775 F.2d 1051, 1054 (8th Cir. 1985) (cited by Defendants in Memo at 4-5) (requiring specificity because the complaint alleged mail fraud). The law is clear, however, that where the alleged criminal acts "do not involve fraud, the more lenient pleadings standard in Rule 8(a) applies." *Planned Parenthood of the Columbia v. American Coalition of Life Activists*, 945 F. Supp. 1355, 1379 (D. Ore. 1996).

*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989), is directly on point. In *Rose*, a RICO case alleging criminal conduct (bribery and extortion), the District Court found plaintiff's allegations

insufficient because, *inter alia*, their allegations were "made 'upon information and belief' and [did] not approach the standard of pleading required under RICO." *Id.* at 361. The Third Circuit reversed, noting that "pleading on information and belief" is "a practical necessity." *Id.* (quoting 5 C. Wright & A. Miller § 1224, at 155-56). *See also Melo-Sonics Corp. v. Cropp*, 342 F.2d 856, 859 (3d Cir. 1965) ("On a motion to dismiss on the ground that the complaint does not state a claim on which relief can be granted, the rule is that the complaint must be viewed in the light most favorable to plaintiff and the truth of all facts well pleaded, admitted . . . . This includes facts alleged on information and belief."); *General Acc. Ins. Co. of America v. Fidelity & Deposit Co. of Maryland*, 598 F. Supp. 1223, 1231 (E.D. Pa. 1984) ("Pleading on the basis of information and belief is generally permitted under the Federal Rules of Civil Procedure and is a practical necessity.") (cited with approval in *Rose*, 871 F.2d at 361).

The Third Circuit also held in *Rose* that because the plaintiffs alleged a criminal act other than fraud, they were "not required to adhere to the higher pleading standard of 'particularity' mandated by Fed.R.Civ.P. 9(b)." *Rose*, 871 F.2d at 356 n.33; *see also id.* at 362 n.53 ("requirement that fraud allegations be pleaded with greater particularity than others is inapplicable here, since the plaintiffs allege no fraud"). Instead, the court held in *Rose* that it was "enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action." *Id.* at 355 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 790 (3d Cir. 1984)). *Accord McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992) (distinguishing pleading standard for RICO claims involving fraud as compared to extortion and holding that "the court should have evaluated the [extortion] claim against the more lenient pleading standards of [Federal Rule of Civil Procedure] 8(a)"); *Vicom, Inc. v. Harbridge*

*Merchant Servs., Inc.*, 20 F.3d 771, 776 (7th Cir. 1994) (unless the RICO claim involves fraud, it must meet only the Rule 8 pleading standard).

Plaintiffs' DPPA claim has nothing to do with fraud, and Plaintiffs need not prove any fraudulent act to prevail. Therefore, Federal Rule of Civil Procedure 8, rather than Rule 9(b), applies. Under Rule 8, Plaintiffs are required only to provide "fair notice" of the claim being asserted and "the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1955). Plaintiffs easily satisfied this Rule 8 standard by alleging that Defendants violated the DPPA "by knowingly obtaining, disclosing and/or using Plaintiffs' and the class members' personal information from motor vehicle records without Plaintiffs' or the class members' consent, for purposes not permitted by the DPPA." (Amended Complaint, ¶ 65).

Defendants' related argument that the "amended complaint does not allege that the statutory DPPA permitted uses are inapplicable" (Memo at 5-9) is not true. Plaintiffs expressly alleged that Defendants obtained, disclosed, and/or used their motor vehicle records "for purposes not permitted by the DPPA." (Amended Complaint, ¶ 65). That allegation states a claim under the DPPA, and is sufficient under any pleading standard. *See* 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain . . . personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."); 18 U.S.C. § 2724(a) ("A person who knowingly obtains . . . personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains . . . ."). Plaintiffs are not required to <u>prove</u> a negative – *i.e.*, that Defendants' use does not fall into any of the 2721(b) categories – in their Amended Complaint.

*Russell v. Choicepoint Services, Inc.*, 302 F. Supp. 2d 654 (E.D. La. 2004), cited by Defendants on page 9 of their memorandum, is inapposite. *Russell* involved a suit against Lexis-

Nexis,[7] which bought personal information from the Lousiana DMV for purposes of reselling it to third parties having permissible uses for the information. *Id.* at 664. The *Russell* court held that the language of 18 U.S.C. § 2721(c), which allows an "authorized recepient of personal information" to "resell or redisclose the information" for uses permitted under section 2721(b), "indicates an intent on behalf of Congress to delegate authorization to the states and thereby permit personal information resellers like [Lexis-Nexis] who are authorized by the state or its DMV to obtain drivers' personal information for the purpose [of] redistribution to persons with 'permissible uses.'" *Id.* at 665. The court concluded that under section 2721(c), Lexis-Nexis' "obtainment of plaintiffs' personal DMV records for the sole purpose of resale and redisclosure does not entitle plaintiff to relief under the DPPA." *Id.* at 669.

Even if the District Court from the Eastern District of Louisiana were correct in holding that the "purpose of resale and redisclosure" is a "permissible use" under the DPPA (in addition to the other permissible uses enumerated in section 2721(b)), the *Russell* holding has no bearing on this case. Plaintiffs have pleaded that Defendants obtained, disclosed, and/or used the personal information "for purposes not permitted by the DPPA." (Amended Complaint, ¶ 65). Moreover, Defendants have not argued (and, because they are in the labor business, cannot, in good faith, argue) that they were "authorized recipients" of the information for the "purpose of resale and redisclosure." Defendants, of course, are free to make that argument on the merits within the confines of Federal Rule of Civil Procedure 11. Plaintiffs, however, need not disprove Defendants' as-yet-unmade arguments in their Amended Complaint.

---

[7] Actually, the defendant was Reed Elsevier Services, Inc., which does business as Lexis-Nexis. *Russell*, 302 F. Supp. 2d at 657.

Because Plaintiffs have adequately pleaded a claim under the DPPA, the Court should deny Defendants' motion to dismiss.[8]

### III. CONCLUSION.

For the reasons discussed above and in their memorandum in opposition to the Teamsters' motion to dismiss, which is incorporated by reference herein, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

Dated: October 4, 2004

Respectfully submitted,

/s/ James Bucci

SPECTOR GADON & ROSEN, P.C.
By: Paul R. Rosen (Atty. ID No.: 13396)
    EFC No.: PR2326
    James Bucci (Atty. ID No. 63175)
    EFC No.: JB1757
    Beth Lincow Cole (Atty. ID No. 81042)
    EFC No.: BC1124
1635 Market Street, 7th Floor
Philadelphia, PA 19103
215-241-8888
Attorneys for Plaintiffs

---

[8] Defendants' argument that Plaintiffs failed to plead a claim against Raynor with the requisite specificity (Memo at 23) fails for the same reasons. Plaintiffs alleged that Raynor "caused UNITE and others . . . to engage in, as well as personally directed, authorized or otherwise supervised, the unlawful conduct alleged herein." (Amended Complaint, ¶ 19). Individuals, of course, may be personally liable for torts they commit. Plaintiffs' allegation, if proven, is sufficient to confer liability on Raynor under the DPPA. *See Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983) (officer can be personally liable for directing the commission of a tort); *Melnick v. Stembrowski*, 1997 WL 83768, *1 (E.D.Pa. 1997) ("[t]he rule is that an officer of a corporation who takes part in the commission of a tort by a corporation or who specifically directs the particular act to be done can be held personally liable") (citing *Wicks*). Therefore, the allegation properly gives Raynor "fair notice" of the claim being asserted against him and the "grounds upon which it rests." *Conley*, 355 U.S. at 45-46.

# CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing on all parties by causing true and correct copies thereof to be sent to counsel for Defendants as follows:

Mark Featherman, Esquire
Willig Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
*(Counsel for UNITE and B. Raynor)*
(via First Class Mail)

Tom Kennedy, Esquire
Kennedy, Schwartz and Cure
113 University Place, 7th Floor
New York, NY 10003
*(Counsel for UNITE and B. Raynor)*
(via First Class Mail)

Neil Ditchek, Esquire
International Brotherhood of Teamsters
25 Louisiana Avenue, NW
Legal Department
Washington, DC 20001
*(Counsel for Teamsters)*
(via First Class Mail)

Thomas Kohn, Esquire
Markowitz and Richman
121 South Broad Street, Suite 1100
Philadelphia, PA 19107
*(Counsel for Teamsters)*
(via First Class Mail)

Dated: October 4, 2004

James Bucci