```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH PICHLER, et al.    :    CIVIL ACTION
                             :
          v.                 :
                             :
UNITE (UNION OF NEEDLETRADES, :
INDUSTRIAL & TEXTILE EMPLOYEES :
AFL-CIO)                     :    NO. 04-2841
```

<u>MEMORANDUM</u>

Dalzell, J.                                    October 17, 2006

        Before us now is plaintiffs' motion to amend the August

30, 2006 Judgment (the "Judgment"), and the parties' briefs on

this matter, filed pursuant to our Order of September 20, 2006,

wherein we instructed them to address various issues concerning

remedies.


I.   **Background**

        On August 30, 2006, we held that UNITE HERE ("UNITE")

had violated the Driver's Privacy Protection Act of 1994 ("DPPA"

or the "Act"), and therefore granted judgment in favor of the

named plaintiffs and against UNITE as to liability.  <u>See</u> <u>Pichler</u>

<u>v. UNITE</u>, -- F. Supp. 2d --, 2006 WL 2529688 (E.D. Pa. Aug. 30,

2006).  We also certified the case for appeal pursuant to Fed. R.

Civ. P. 54(b).[1]  <u>See</u> <u>id.</u> at *14-15.  In a letter submitted to the

---

        [1] Federal Rule of Civil Procedure 54(b) provides that "when
multiple parties are involved, the court may direct the entry of
a final judgment as to one or more but fewer than all of the . .
. parties only upon an express determination that there is no
just reason for delay and upon an express direction for the entry
of judgment."  In our August 30 decision, we expressly found "no
just reason" to delay entry of judgment in favor of the named
plaintiffs and against UNITE.  We also stated our reasons for
doing so, namely that this class action presents novel questions

Court on September 7, 2006, plaintiffs contend that under <u>Sussex</u> <u>Drug Products v. Kanasco, Ltd.</u>, 920 F.2d 1150 (3d Cir. 1990), and its progeny, the Judgment is not "final" for purposes of a Rule 54(b) appeal because we have not yet resolved all of the remedial issues as to the named plaintiffs.

We notified the parties that we would treat plaintiffs' letter as a motion to amend the Judgment pursuant to Fed. R. Civ. P. 59(e).  <u>See</u> Order of Sept. 20, 2006 and attached Letter of Sept. 7, 2006.  To remove any uncertainty as to our Court of Appeals's jurisdiction over an appeal on the Judgment in favor of the named plaintiffs and against UNITE, we shall now resolve the open remedial issues as they concern these plaintiffs.

## II.  <u>Remedies</u>

Plaintiffs seek three forms of relief:  statutory damages, punitive damages, as well as an injunction.  They also ask that the Judgment specify that they may file a request for

---

in need of appellate clarity before we begin the costly, complex and cumbersome process of class-wide relief.  <u>See</u> <u>Carter v. City</u> <u>of Philadelphia</u>, 181 F.3d 339, 346 (3d Cir. 1999) (holding that district courts should explain their reasons for certifying a judgment for appeal under Rule 54(b), though failure to do so is not a jurisdictional bar for the appellate court).  Other relevant factors also weigh in favor of a Rule 54(b) certification.  <u>See</u> <u>Allis-Chalmers Corp. v. Philadelphia Elec.</u> <u>Co.</u>, 521 F.2d 360, 364 (3d Cir. 1975) (offering illustrative list of factors court may consider).  For instance, because the exact size and membership of the class has yet to be determined, the claims of the named plaintiffs are readily separable from those of the putative class members.  <u>See</u> <u>id.</u>  Also, in any appeals that may follow imposition of class-wide relief, the Court of Appeals will not have to revisit the issues of first impression in this Circuit that it would resolve on a Rule 54(b) appeal now. <u>See</u> <u>id.</u>

attorneys' fees and costs if they prevail after exhaustion of appeals.[2]

The DPPA's remedies for civil actions are set forth in 18 U.S.C. § 2724, which provides:

> **(a) Cause of action.**--A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.
>
> **(b) Remedies.**--The court may award--
>
> **(1)** actual damages, but not less than liquidated damages in the amount of $2,500;
> **(2)** punitive damages upon proof of willful or reckless disregard of the law;
> **(3)** reasonable attorneys' fees and other litigation costs reasonably incurred; and
> **(4)** such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724 (emphasis added).

The plain language of Section 2724 -- "the court may award" -- leaves no doubt that Congress gave district courts the discretion to grant or deny each of the remedies.  As the Eleventh Circuit has explained:

> [T]he district court, in its discretion, may fashion what it deems to be an appropriate award.  Among the options for the district court is the option to award "actual damages, but not less than liquidated damages in the

_____

[2] We have already granted plaintiffs' unopposed request for such timing for any bill of costs and application for attorneys' fees.  See Order of Sept. 20, 2006.  To make clear that we have addressed all of the named plaintiffs' requested forms of relief, however, we shall amend the Judgment to include this provision.

> amount of $2,500."  In fashioning an
> appropriate award, the district court may
> also consider the other forms of relief that
> are available and were requested by [the
> plaintiff] -- punitive damages, reasonable
> attorney's fees and costs, and the
> destruction of all of [plaintiff's] personal
> information illegally obtained from motor
> vehicle records.

Kehoe v. Fidelity Federal Bank & Trust, 421 F.3d 1209, 1217 (11th
Cir. 2005), cert. denied, 126 S.Ct. 1612 (2006).  We now consider
the facts of this case in order to "fashion . . . an appropriate
award."

### A.  Statutory Damages

In the Judgment, we awarded each named plaintiff $2,500
in statutory damages, with the exception of Thomas Riley and Amy
Riley, to whom we granted a single statutory damages award of
$2,500 because they are married co-owners of the vehicle whose
license plate UNITE searched.[3]  The parties now contest how the
statutory damages are properly calculated.  We first turn to
their arguments concerning the relevance of a vehicle's title,
and then consider how statutory damages should be assessed for
each plaintiff.

### 1.  Co-ownership of vehicles

The parties disagree as to whether joint owners of a

---

[3] A tenancy by the entireties "exists when property, either
real or personal, is held jointly by a husband and wife, with its
essential characteristic being that each spouse is seised of the
whole or the entirety and not a divisible part thereof."
Clingerman v. Sadowski, 519 A.2d 378, 380 (Pa. 1986) (footnote
omitted).

vehicle are each entitled to a separate statutory damages award of $2,500 or whether they must share that award.  This issue affects four named plaintiffs:  husband and wife Thomas Riley and Amy Riley who co-owned a car, and mother and son Holly Marston and Seth Nye who co-owned a car.  UNITE searched these jointly-owned cars' license plates and thereby obtained the identities of these four named plaintiffs.

Plaintiffs argue that the DPPA's focus is protecting privacy, not property, so co-ownership of vehicles is immaterial for purposes of calculating damages awards.  Likewise, they contend that the relationship between any given co-owners is irrelevant.  In particular, they assert that Thomas Riley and Amy Riley, who own their car as tenants by the entireties, each enjoys a right to privacy of his or her "personal information."[4] Plaintiffs note that nothing in the DPPA suggests that a vehicle's co-ownership affects its owners' interest in safeguarding the confidentiality of their personal information. In fact, the DPPA makes violators liable "to the <u>individual</u> to whom the information pertains."  18 U.S.C. § 2724(a) (emphasis added).

---

[4] The DPPA defines "personal information" as:

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3).

UNITE argues that Congress intended for co-owners of a vehicle to share one statutory damages award.  In other words, UNITE contends that it should not have to pay multiple statutory damages awards for a single "transaction."  Regardless of whether we agree with this position, UNITE asserts that we should exercise our discretion to decline to give multiple awards for a transaction involving only one vehicle.

UNITE also contends that certain co-owners do not have standing to sue under the DPPA.  The DPPA authorizes civil actions by an "individual" and, with respect to Thomas Riley and Amy Riley, UNITE contends that because the information in their motor vehicle title pertains to an "entity," i.e. their tenancy by the entireties, they are not "individuals" within the meaning of the DPPA and therefore lack standing to sue.  For Seth Nye and Holly Marston, UNITE states the record is unclear as to whether they are joint tenants or tenants in common.  UNITE contends that this lack of evidence as to whether they own the car as an "entity" or an "individual" means that they cannot recover under the DPPA.

We have already explained what is necessary for standing to sue under the DPPA:

> The DPPA provides a private cause of action to "the individual to whom [unlawfully obtained, disclosed, or used] information pertains."  See 18 U.S.C. § 2724(a) (2005). If the information does not "pertain" to an individual, then that individual may not sue under the DPPA.  In other words, the only "interest" that the DPPA protects is an individual's interest in the privacy of motor vehicle records that include information

6

> about her.  If a motor vehicle record does
> not include information about a person, then
> that person has no "legally protected
> interest" in the confidentiality of that
> motor vehicle record.

Pichler v. UNITE, 228 F.R.D. 230, 241 (E.D. Pa. 2005).  When

UNITE searched the license plates of the vehicle owned by Thomas

Riley and Ann Riley, and the vehicle owned by Holly Marston and

Seth Rye, it obtained information about each of these four

people.  Each of them has an "interest" in the privacy of the

motor vehicle record that included information about him or her,

so each one has standing to sue.

As to UNITE's argument that each transaction only

merits a single damages award, nothing in the DPPA supports that

reading.[5]  Congress intended to protect the confidentiality of

people's identities and other personal information, and it

undoubtedly knew when drafting the DPPA that some vehicles are

co-owned.  Nevertheless, it gave each "individual to whom the

information pertains" the right to sue.  Thus, an individual's

DPPA-protected interest in shielding her privacy is not diluted

because she co-owns a vehicle, and neither should her damages

award be.

In sum, each person whose DPPA-protected interest UNITE

violated is entitled to sue individually for each of the remedies

set forth in Section 2724(b).  We shall therefore amend the

---

[5] UNITE compares how courts have treated damages issues
under the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 et seq.
See UNITE's Mem. 3-5.  However, the analogy is not helpful
because of material differences between the language and purpose
of the DPPA and those of TILA.

Judgment to grant separate damages awards to Thomas Riley and Amy Riley.

### 2.  Calculation of statutory damages

Plaintiffs do not seek actual damages, but they do ask us to recalculate each award of liquidated damages.  They contend that UNITE should pay $2,500 for each time it "obtain[ed]" or "use[d]" the personal information in violation of the DPPA.  They deem each home visit and each mailing -- except for mailings done in connection with the Veliz v. Cintas litigation, see Pichler v. UNITE, 2006 WL 2529688, at *11 -- a separate "use[]."  Thus, if UNITE searched one's license plate number to get one's name and address, then visited one at home, and also mailed one a union newsletter, plaintiffs contend that such a victim is entitled to $7,500.  Of the nine named plaintiffs, three claim they suffered two violations each and seek $5,000 per person, and six claim they suffered three violations each and seek $7,500 per person.

UNITE contends that plaintiffs' calculation of statutory damages is contrary to the DPPA's language and Congressional intent, as well as the theory behind statutory damages.  According to UNITE, the statutory damages are offered in lieu of all the actual damages that a plaintiff might prove from violations of Section 2724(a).  In other words, if a plaintiff cannot prove any damages -- even if UNITE visited her and mailed her a letter after obtaining her name and address -- she is entitled to $2,500, but not a multiple of that sum.

UNITE also notes that in almost every DPPA case where a court finds liability, there will be an "obtain[ing]" violation and at least one "use[]" violation. Therefore, applying plaintiffs' reasoning would effectively raise the statutory damages minimum to $5,000 in almost every case.

Finally, UNITE argues that if Congress had intended to provide a plaintiff with multiple awards of statutory damages where she suffered multiple violations, it would have expressly stated that, as it has done in other statutes. See UNITE's Mem. 11 (citing seven statutory examples, including 26 U.S.C. § 7431 (c)(1)(A), which specifies "$1,000 for each act of unauthorized inspection or disclosure of a [tax] return").

Plaintiffs are correct that under the DPPA each instance of "obtain[ing]" or "use[]" constitutes a violation of the DPPA. Section 2724(a) states that one who "obtains, discloses or uses personal information" for an impermissible purpose violates the DPPA. The disjunctive "or" makes clear that each action stands alone as a violation. See Parus v. Cator, No. 05-0063, 2005 WL 2240955, at *4 (W.D. Wis. Sept. 14, 2005) ("[Section 2724(a)] uses the disjunctive 'or' to connect the terms 'obtains,' 'discloses' and 'uses.' Therefore, each term must be given a separate meaning.").

However, multiple violations with respect to a single plaintiff do not automatically entitle that plaintiff to a separate statutory damages award for each violation. The DPPA does not specify how statutory damages should be calculated with

respect to each plaintiff.  We may have the discretion to stack the statutory damages awards as plaintiffs request, but whether we should do so is quite another matter.

The record shows that UNITE's violations, with respect to the named plaintiffs, consist of the union's obtaining each plaintiff's name and address, visiting most of them, and then sending some of them mail.  See Pichler v. UNITE, 2006 WL 2529688, at *4-5 & n.26, *11.  There is no evidence that UNITE ever shared the named plaintiffs' personal information with anyone outside of the union, nor is there evidence that it contacted these plaintiffs for any purpose other than its Cintas organizing campaign.

Thus, UNITE is the typical defendant in a DPPA civil action:  it obtained people's names and addresses so that it could use that information to contact them.  Indeed, it would make little sense to merely collect names and addresses with no intention of using them in some way.  Congress surely understood that the usual case would involve at least one instance of "obtain[ing]" and one "use[]," and it decided that a plaintiff who did not or could not show actual damages could nevertheless receive $2,500.  Therefore, we do not think it would be appropriate here to effectively double the statutory minimum by adding $2,500 for each violation as to a single plaintiff.[6]

---

[6] To be sure, some cases may merit multiple statutory awards per plaintiff.  For instance, multiple awards might be proper if a DPPA violator had bombarded a person with weekly visits and mailings for months on end, despite that person's expressed desire that the contacts cease.  However, the record here simply

On this record, we think a proper exercise of our Congressionally-authorized discretion is to award $2,500 in statutory damages to each named plaintiff.[7]

### B.  **Punitive Damages**

Plaintiffs contend that a jury trial on punitive damages is required.  The DPPA does not provide for a jury trial on this (or, for that matter, any) issue.  In fact, it expressly sets forth that "[t]he court may award . . . punitive damages." 18 U.S.C. § 2724(b)(2) (emphasis added).

Plaintiffs cite our Order of August 1, 2005, wherein we explained that a plaintiff seeking punitive damages must prove that "(1) a defendant willfully or recklessly obtained, disclosed, or used personal information from her motor vehicle records; and (2) the purpose of such obtaining, disclosure, or use was not permissible under the DPPA."  Order of Aug. 1, 2005 ¶ k.  We found that both legal and equitable relief depended on resolving whether UNITE's purpose in obtaining, disclosure, or use was not permissible under the DPPA -- the second element of the punitive damages claim -- and therefore held that the Seventh

_____

does not suggest that UNITE descended to such a gross disregard for the named plaintiffs' privacy.

[7] It is undisputed that UNITE retrieved each named plaintiff's information from a license plate search, so each plaintiff suffered at least one DPPA violation.  Because we choose not to award plaintiffs $2,500 for each subsequent violation, we need not address UNITE's quibbles about factual disputes, such as whether the named plaintiffs were all visited by UNITE, as opposed to representatives of the International Brotherhood of Teamsters, a former defendant here.

Amendment required a jury to determine that "common issue." Id.
at ¶ m.  We did not hold that a jury had to resolve the first
element of the punitive damages claim.  We also noted we could
enter summary judgment if uncontroverted evidence established
that, as a matter of law, defendants acted for a permissible or
impermissible purpose.  Id. at 4 n.4.  On summary judgment, we
indeed found that such evidence in fact established that UNITE
violated the DPPA.  Having resolved the "common issue" as a
matter of law, we must now decide, pursuant to 18 U.S.C. §
2724(b)(2), whether punitive damages are warranted.

        The DPPA plainly gives us the discretion to award or to
deny punitive damages, even if UNITE violated the DPPA and did so
willfully and recklessly.  See Pichler v. UNITE, 228 F.R.D. at
259.  We must craft an appropriate award bearing in mind the
purposes of the statute and the relevant jurisprudence on
punitive damages.  In particular, we are mindful of the Supreme
Court's admonition that "[i]t should be presumed that a plaintiff
has been made whole by compensatory damages, so punitive damages
should be awarded only if the defendant's culpability is so
reprehensible to warrant the imposition of further sanctions to
achieve punishment or deterrence." State Farm Mut. Auto. Ins.
Co. v. Campbell, 538 U.S. 408, 409 (2003) (emphasis added).

        Plaintiffs contend that UNITE's willful and reckless
behavior warrants punitive damages, particularly because it had
notice that its license plate retrieval activities possibly
violated federal law, but it continued to use that tactic.

12

Indeed, in 2000 UNITE was sued under the DPPA in Tarkington v. Hanson, Docket No. 4-00-CV-00525 JMM (E.D. Ark. Aug. 25, 2000), and it settled that case.  See Pichler v. Unite, 2006 WL 2529688, at *6-7 (describing the Tarkington litigation).  Yet even after Tarkington, and after plaintiffs filed this lawsuit, UNITE continued using license plate searches in some campaigns, see id. at *4, though there is no evidence that it did so for the Cintas campaign after June of 2004.

UNITE has argued throughout this litigation that its decades-old practice of license plate retrieval is permissible and that its activities fall within the DPPA's exceptions.  UNITE also points out that after many months of discovery and thousands of documents, there is no evidence that it used people's personal information for anything other than matters directly connected to its union organizing campaign.

Notably, on April 26, 2006, before we held that UNITE's activities violated the DPPA, the UNITE Legal Department distributed a memorandum to its officers, staff, and affiliates that instructed campaigners as to what they may and may not do to obtain information for organizing and other campaigns.  See UNITE's Supp. Mem. of Law ("UNITE's Supp."), Garren Decl. Oct. 3, 2006,[8] Ex. A.  The first directive in that memorandum states: "Do not use license plate numbers to obtain any information from Department of Motor Vehicles records, including names and

---

[8] Brent Garren is UNITE's Senior Associate General Counsel. UNITE's Supp., Garren Decl. ¶ 1.

addresses.  This policy applies in all states and provinces in the United States and Canada."  <u>Id.</u>

We find that this clear instruction, plus the certainty that further license plate retrievals will result in costly damages awards, will effectively deter UNITE from further violations of the DPPA.[9]  Thus, we achieve deterrence without imposing punitive damages.

As to punishment, while we now decide punitive damages only with respect to the named plaintiffs, we cannot ignore the consequences of the class issues.  Assuming for the moment that plaintiffs prevail on appeal, UNITE will surely have to pay a very large class award.  With a class estimated (by plaintiffs) to include between 1,758 and 2,005 people, assuming $2,500 in statutory damages per person, UNITE will have to pay between $4,395,000 and $5,012,500 in statutory damages alone.  Moreover, plaintiffs will be entitled to "reasonable attorneys' fees and other litigation costs reasonably incurred."  18 U.S.C. § 2724(b)(3).  After more than two years of intensive litigation in a case involving many issues of first impression, plus extensive class discovery, we confidently predict that the attorneys' fees and costs will be considerable.  Thus, UNITE will be amply punished by the multi-million-dollar award it will owe plaintiffs and the class if they prevail on appeal.

In sum, Congress's goal of protecting individuals'

---

[9] Of course, if UNITE reverted to using this impermissible tactic, that would justify revisiting our punitive damages calculus.

privacy is readily accomplished here by the imposition of statutory damages, the injunctive relief described below, and the reasonable attorneys' fees and costs that will be awarded to plaintiffs if they ultimately prevail.  Punitive damages would not further advance the DPPA's purposes and are unnecessary to deter or punish UNITE.  We shall therefore deny plaintiffs' request for punitive damages.

### C.  Injunctive Relief

Plaintiffs seek an injunction that would: (1) prevent UNITE from "obtaining, disclosing, or using personal information obtained from motor vehicle records for purposes of union organizing or for any other purpose not permitted by 18 U.S.C. § 2721(b)," and (2) "order[] UNITE to permanently expunge from its records all information with respect to these named Plaintiffs, and to certify under oath that it has done so."  Pls.' Supp. Mem. of Law 17.  UNITE contends that the Norris LaGuardia Act, 29 U.S.C. § 104,[10] bars an injunction that would prevent the union

---

[10] The Norris LaGuardia Act provides that:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

**(a)** Ceasing or refusing to perform any work or to remain in any relation of employment;
**(b)** Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of

from contacting Cintas employees who are members of the class in connection with UNITE's organizing campaign at Cintas. Nevertheless, UNITE seems to concede that the Norris LaGuardia Act would not bar all types of injunctive relief:  "UNITE . . . submits that any injunction entered must be carefully tailored to avoid interference with a union's right to organize the employees of Cintas."  UNITE's Mem. 24.  In any event, UNITE contends that an injunction would be inequitable here because of the DPPA's harsh statutory liquidated damages.

As we have already found, this case is not about unfair labor practices, see Pichler v. UNITE, 339 F. Supp. 2d 665, 668-69 (E.D. Pa. 2004), nor is it a "labor dispute" within the

---

this title;

**(c)** Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

**(d)** By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

**(e)** Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

**(f)** Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

**(g)** Advising or notifying any person of an intention to do any of the acts heretofore specified;

**(h)** Agreeing with other persons to do or not to do any of the acts heretofore specified; and

**(i)** Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

29 U.S.C. § 104.

meaning of the Norris LaGuardia Act.[11]  This is a case about a
union violating individuals' federally-protected interest in the
confidentially of personal information.  To be sure, UNITE enjoys
the protections of the Norris LaGuardia Act, but those rights are
not endangered here.  We shall craft an injunction that is
faithful to the DPPA's purposes, protects the named plaintiffs
from further violations, and safeguards UNITE's right to continue
prosecuting its Cintas organizing campaign.

       To that end, we shall enjoin UNITE from using the named
plaintiffs' personal information that was obtained in violation
of the DPPA.[12]  If UNITE can establish that it obtained those
plaintiffs' names and addresses through other legitimate means,
this injunction will not bar the union from using that
information in its organizing campaign.  We stress that UNITE has

---

[11] The Norris LaGuardia Act defines "labor dispute" to
include "any controversy concerning terms or conditions of
employment, or concerning the association or representation of
persons in negotiating, fixing, maintaining, changing, or seeking
to arrange terms or conditions of employment, regardless of
whether or not the disputants stand in the proximate relation of
employer and employee."  29 U.S.C. § 113(c).

[12] Our decision today does not resolve any potential class-
wide relief issues.  However, we note that UNITE argues that
destruction of all class members' information would interfere
with organizing efforts and be based on the false assumption that
UNITE had obtained all class members' names and addresses through
tagging.  Indeed, we know such an assumption would be wrong
because the parties have already stipulated that UNITE developed
contact lists of presumed Cintas workers using many sources.  See
Jt. Stip. ¶ 29.  These are matters we will revisit in the future.
       Until then, we caution UNITE to think carefully about using
any names and addresses obtained solely through activities that
we have held violate the DPPA.  Should it decide to do so,
evidence of such use would be highly relevant in determining
appropriate class-wide relief, including damages calculations and
injunctions.

the burden of proving that it lawfully obtained the named plaintiffs' personal information.

## III.  <u>Conclusion</u>

For the reasons we discuss above, we shall grant in part plaintiffs' motion to amend the Judgment.  We shall grant Thomas Riley and Amy Riley each a separate statutory damages award of $2,500, and we shall impose an injunction that prohibits UNITE from using any personal information of the named plaintiffs that it obtained in violation of the DPPA.  We shall also specify that plaintiffs shall file attorneys' fees and costs, if they prevail, after exhaustion of appeals.

An appropriate Order and amended Judgment follow.