IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH PICHLER, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITE (UNION OF NEEDLETRADES, | : | |
| INDUSTRIAL & TEXTILE EMPLOYEES | : | |
| AFL-CIO), et al. | : | NO. 04-2841 |

MEMORANDUM

Dalzell, J.                                    December 4, 2006

        Plaintiffs move to unseal the portions of the summary
judgment record that the parties filed under seal.  Defendant
UNITE HERE ("UNITE") has responded, and both parties have filed
supplemental briefs.  The parties have agreed to unseal most of
the documents in question, so today we address whether the
information that UNITE identifies for continued protection should
remain under seal.


**I.  Background**[1]

        In December of 2004, defendants[2] moved for a protective
order, suggesting, _inter alia_, that what they called a
"collective bargaining privilege" insulated information from

---

    [1] Because of the lengthy history of this litigation, we
rehearse here only the factual background relevant to the motion
now before us.

    [2] In December of 2004, defendants included UNITE, Bruce
Raynor, and the International Brotherhood of Teamsters (the
"Teamsters").  This motion to unseal concerns only defendant
UNITE.  Mr. Raynor did not filed his summary judgment documents
under seal, and we dismissed the Teamsters before summary
judgment motion practice.  _See_ Order of Sept. 23, 2005 (approving
Consent Order between plaintiffs and the Teamsters that settled
all claims between them and dismissed the action against the
Teamsters).

disclosure.  Because we found no authority that supported such a broad privilege, we rejected that argument.  <u>See</u> Order of Jan. 7, 2005 at 3 n.1.  We nevertheless held that, in light of the contentious history between defendants and Cintas, the company whose employees the unions are trying to organize, defendants' concerns identified a risk of injury that was sufficiently defined and serious to warrant a protective order.  <u>Id.</u> at ¶¶ (g)-(j).  We therefore allowed defense counsel to "[designate] potential evidence as confidential if that potential evidence directly relates to defendants' labor union organizing or mobilization strategies" and created a procedure whereby plaintiffs could challenge such designations.  <u>See</u> <u>id.</u> at ¶¶ 2-4. Pursuant to that protective order, plaintiffs and UNITE filed a number of documents under seal, including much of the summary judgment record.

UNITE having appealed our grant of summary judgment to plaintiffs (but not yet to the class), plaintiffs now move to unseal the portion of the summary judgment record that the parties filed under seal,[3] contending that changed circumstances warrant it.  Pursuant to our Order of November 9, 2006,[4] the

---

[3] These documents are the parties' Joint Stipulation of Facts and Supplemental Joint Stipulation of Facts, and the Exhibits thereto; the Declarations of Thomas Kennedy, Ahmer Qaheed, Megan Chambers, Julie Hodek, Eric Frumin, and the Exhibits thereto; and the parties' Memoranda of Law filed in Support of their Cross-Motions for Summary Judgment, including the Exhibits and documents attached thereto.

[4] That Order resolved some of the arguments raised in the motion and response, so we shall not revisit those matters.

parties filed supplemental briefs identifying the portions of the
summary judgment record they believe should remain under seal.
<u>See</u> Order of Nov. 9, 2006 ¶¶ (i)-(k), n.2, ¶¶ 1-2, n.4.
Although, as noted, this case is now on appeal, and mindful of
Third Circuit Local Appellate Rule 30.3(b) and Miscellaneous Rule
106.1(c)(2), we hope that by resolving this motion we will
simplify matters for the appellate record.

## II.  Analysis

### A.  Legal Standard

Our Court of Appeals has instructed that "[e]ven if the
initial sealing was justified, when there is a subsequent motion
to remove such a seal, the district court should closely examine
whether circumstances have changed sufficiently to allow the
presumption allowing access to court records to prevail." <u>Miller
v. Indiana Hosp.</u>, 16 F.3d 549, 551-52 (3d Cir. 1994).  It has
also emphasized that "continued sealing must be based on '*current
evidence* to show how public dissemination of the pertinent
materials *now* would cause the competitive harm [they] claim[].'"
<u>Leucadia, Inc. v. Applied Extrusion Technologies, Inc.</u>, 998 F.2d
157, 167 (3d Cir. 1993) (quoting <u>Republic of the Philippines v.
Westinghouse Elec. Corp.</u>, 949 F.2d 653, 663 (3d Cir.1991)).

Almost two years have passed since we issued our
protective order, and since then UNITE has continued to
vigorously wage against Cintas what UNITE describes as "the

3

largest union drive in North America."  UNITE HERE,
http://www.unitehere.org (last visited Dec. 4, 2006).  In January
of 2005, we were concerned that Cintas might use information
about UNITE's organizing methods "to devise preemptive defenses
to defendants' unionization effort."  Order of Jan. 7, 2005 ¶
(f).  Now, however, almost four years have passed since UNITE
launched its campaign, and during this time UNITE and Cintas have
learned much about each other's goals, strategies, and tactics.
Indeed, a visit to their respective Web sites reveals that these
adversaries are intimately aware of each another's activities.
See UNITE HERE, http://www.uniformjustice.org (last visited Dec.
4, 2006); Cintas, http://www.cintas.com/company/news_media/
cintas_and_unions/union_tactics.asp (last visited Dec. 4, 2006).
Thus, UNITE no longer faces the same potential harm it did
earlier in the campaign.

        Also, much of the information filed under seal is now
part of the public record.  When ruling on the cross-motions for
summary judgment and holding that UNITE's license plate retrieval
activities violated the Driver's Privacy Protection Act ("DPPA"),
we expressly relied upon and referred to much of the sealed
information.  Release of testimony about publicly available
information is not entitled to continued sealing.  See Miller, 16
F.3d at 551 (ordering a district court to unseal a record and
finding it relevant that the district court's published opinions
relied on sealed information).

        On these facts, we find that circumstances have changed

4

sufficiently to warrant reevaluating whether the information UNITE wants to keep under seal should remain so.  We now consider the standard we must apply to any information that UNITE wants us to protect.

The common law right of public access to judicial records is "beyond dispute," but it is "not absolute." Littlejohn v. Bic Corp., 851 F.2d 673, 678 (3d Cir. 1988) (citation omitted).  We must balance "the strong common law presumption of access . . . against the factors militating against access."  Leucadia, 998 F.2d at 165 (quoting Bank of America Nat'l Trust & Savings Ass'n. v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986)).  Interests overriding the public's right to access can include "the content of the information at issue, the relationship of the parties, or the nature of the controversy."  Publicker Industries, Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984).

Notably, when the continued sealing of documents is challenged, the burden of overriding the presumption of access rests squarely with the party seeking secrecy, who must "show that the interest in secrecy outweighs the presumption" by making "a 'particularized showing of the need for continued secrecy' if the documents are to remain under seal."  Leucadia, 998 F.2d at 165-66 (quoting Bank of America, 800 F.2d at 344, 346).  This party cannot satisfy its burden with "[b]road allegations of harm, bereft of specific examples or articulated reasoning."  In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001) (citation

omitted).  Instead, it must show with "specificity" that the
portion of the record it seeks to keep from the public contains
the type of information courts protect and that its "disclosure
will work a clearly defined and serious injury to [it]."  Id.
(quoting Miller, 16 F.3d at 551).

Under this jurisprudence, we must consider whether
UNITE has shown with sufficient particularity that it will suffer
"a clearly defined and serious injury" if we unseal the portions
of the summary judgment record that remain in dispute.  UNITE has
in fact agreed that much of the summary judgment record can be
unsealed and has carefully identified those documents or portions
of documents that it believes merit continued sealing.  It
separates these documents into two categories: (1) those
containing personal information about non-parties; and (2) those
directly relating to its labor union organizing or mobilization
strategies.

### B.  Documents containing personal information

As to the first category, UNITE identifies thirteen
documents.  It asserts that each contains highly personal
information -- names, addresses, telephone numbers, ages, health
information, and checking account numbers -- about current and
former Cintas workers and others who are not parties to this
litigation.  UNITE contends that the public has no legitimate
interest in such documents, while the people whose information is
contained within the documents have the greatest interest in
maintaining their privacy.  Moreover, UNITE points out that many

of the documents contain information about worker complaints against Cintas, and Cintas could use that information to retaliate against workers.

Privacy interests are at the heart of this litigation. We agree with UNITE that the release of personal information could result in "clearly defined and serious injury" by needlessly exposing to the public precisely the type of personal information that Congress protected through the DPPA, and possibly exposing Cintas employees to retaliation for complaints against their employer. Even plaintiffs agree that most of the documents UNITE identifies within this category warrant protection. In light of these facts, and the absence of a legitimate public interest in this information, we find that the type of personal information UNITE seeks to protect merits continued sealing. We examine each of the thirteen documents that UNITE identifies to ensure that each indeed contains such personal information.

We begin with the ten that plaintiffs agree should remain under seal. Exhibit II to the parties' Supplemental Joint Stipulation of Facts contains motor vehicle records abstracts with personal information. Exhibits F, G, J, K, L, and M to the Hodek Declaration, as well as Exhibit E to the Qadeer Declaration, are Discrimination Inventory Forms containing personal information of present and former Cintas employees. Exhibits I and S to the Frumin Declaration are documents that were attached to complaints filed with OSHA, and these set forth

7

personal information about some Cintas employees, as well as descriptive information from which Cintas might determine others' identities.  Having examined  these documents, we conclude that each contains personal information that should be protected and shall therefore remain under seal.

The three documents over which the parties disagree are Exhibit A to the Frumin Declaration, Exhibit I to the Qadeer Declaration, and plaintiffs' Exhibit 32.  Exhibit A to the Frumin Declaration is a completed Laundry Safety Checklist for a named Cintas employee.  Plaintiffs state that their copy of this document does not provide a name.  See Pls.' Supp. Br. at 3 n.5. However, the Court's copy does in fact have a name that is partially obscured, yet still legible.  Because a Cintas employee is identified, this document will remain sealed.

Next, Exhibit I to the Qadeer Declaration is Wage & Hour Overtime Surveys that Cintas workers completed.  While employees' names are not on the surveys, the employees provided sufficient descriptors (i.e., time of hiring, work location, work hours, compensation) that Cintas could deduce their identities. Because of a risk of identification and the possibility of retaliation, this document will remain under seal.

Lastly, plaintiffs' Exhibit 32 is a personal check that Ernest Bennett, UNITE's International Vice-President, gave to Jason Coulter, a UNITE employee, to reimburse him for Westlaw expenses incurred on behalf of UNITE's license plate retrieval activities.  We agree with plaintiffs that the check, which UNITE

used to advance its "tagging" activities, should be in the public record.  However, the personal information on the check -- the name of the other account holder, the home address, the account number, the name of the bank, Coulter's account number on the back of the check, and any other information that might be used to ascertain personal banking information -- must be redacted to protect Mr. Bennett's and the other account holder's privacy.

We shall also protect some information that UNITE seeks to seal as related to its campaign (i.e., its second category), but which we find pertains to privacy interests.  First, we shall redact deposition testimony that identifies the names and addresses of people whose license plate numbers UNITE allegedly searched.  See Pls.' Mot. for Summ. J. Ex. ("Pls.' Ex.") 19 Dartayet-Rodriguez Dep. 69:13-21, 72:2-25, Jan. 10, 2006.  Second, we shall redact all information concerning health matters that are irrelevant to this litigation.  See Pls.' Ex. 1 Bennett Dep. 85:6-17, Jan. 12, 2006, Pls.' Ex. 33 Bennett Dep. 268:8-12, 269:3-6, 272:2-4, Jan. 12, 2006.  Third, we shall protect documents and discussions concerning UNITE's personnel evaluations and employment decisions.  See Supp. to Jt. Stip. of Facts Ex. FF; Pls.' Ex. 13 Coulter Dep. 40:2-49:11, Oct. 27, 2005; Pls.' Ex. 33 Bennett Dep. 279:17-280:25.  Each of these redactions involves personal information about someone, and the public has either no legitimate interest therein or a minimal interest that is outweighed by important privacy concerns.

## C.  Information relating to UNITE's labor union organizing or mobilization strategies

UNITE contends that information about its organizing and mobilizing strategy should remain seal under because of the "content of the information at issue, the relationship of the parties or the nature of the controversy." Publicker Industries, Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984).  UNITE asserts that it and Cintas "could not be greater antagonists" and that "the real controversy underlying this lawsuit is the ongoing battle between Cintas and UNITE."  UNITE's Supp. Mem. of Law in Opp'n to Pls.' Mot. to Unseal ("UNITE's Supp. Mem.") 12.  As to the "content" it seeks to protect, in addition to the information we already discussed, UNITE identifies passages from sixteen depositions.  It subdivides that information into three categories: (1) campaigns other than the Cintas campaign; (2) UNITE's internal deliberations and strategy discussions relating to the Cintas campaign; and (3) information relating to the agreement between UNITE and the Teamsters concerning the Cintas campaign.  We note that plaintiffs agreed to the continued sealing of some of this information, but we review all testimony that UNITE specified with a view to whether our jurisprudence supports its continued sealing.

First, UNITE contends that release of information about other campaigns will inflict upon it a serious injury by offering valuable information about UNITE's operations to targeted employers.  It further asserts that some "campaigns" discussed in

depositions were "merely 'probes' by UNITE organizers and never ripened in to an organizing campaign." UNITE's Supp. Mem. 10. UNITE informs us that "[t]here is no public source from which this information could be obtained." Id. It has also identified precisely where depositions disclose information about non-public "probes," as opposed to public campaigns. See UNITE's Second Supp. Mem. of Law in Opp'n to Pls.' Mot. to Unseal ("UNITE's Second Supp. Mem.") 1-2.

To the extent that depositions mention UNITE's public campaigns and its use of longstanding and well-known union organizing methods, we shall not seal such information. This information is already in the public realm or is typical of union campaigning, and therefore testimony about it cannot work the type of harm that UNITE claims. With respect to non-public "probes," however, we agree with UNITE that release of such information could harm UNITE's ability to organize by revealing its strategic thinking to potentially targeted employers who might use such information to preempt UNITE's organizing activities. We shall therefore protect deposition testimony about "probes."[5]

---

[5] We note that plaintiffs filed a letter in reply to UNITE's Second Supplemental Memorandum in which they contend that UNITE misidentified some public campaigns as "probes." Pls.' Letter of Nov. 30, 2006.

First, plaintiffs wrongly accuse UNITE of designating the public Dillard's campaign as a probe. Compare UNITE's Second Supp. Mem. 1 (requesting redaction for 85:12-86:18 of the Bennett Deposition) with Pls.' Ex. 1 Bennett Dep. 86:19-87:5 (discussing Dillard's campaign).

Second, plaintiffs' exhibits show that some of the passages that UNITE seeks to redact as containing information about probes

Second, UNITE seeks to protect internal deliberations and strategy discussions relating to the Cintas campaign, particularly information about the percentage of its budget dedicated to organizing, campaign planning and procedures (including house calling techniques and license plate retrieval), and personnel assignments.  It argues that because the Cintas campaign is on-going, revealing its internal deliberations and strategy will benefit Cintas and harm UNITE.

But UNITE largely relies on broad allegations of harm and does not address how the passage of time has altered the harm calculus.  We have already noted that at this late date -- almost four years into UNITE's Cintas campaign -- these two adversaries are all too familiar with each other's goals, strategies, and

---

actually reference public campaigns.  See Pls.' Letter of Nov. 30, 2006, Exhibits.  However, counsel often asked deponents to list campaigns they worked on and did not ask them to distinguish between public and non-public activities.  Therefore, the deponents' responses often list public and non-public "campaigns" in the same sentence or paragraph.  We are satisfied that if a short passage of testimony mentions a mix of public campaigns and non-public probes, it may be redacted.  We see no need to slice this any finer.

Finally, plaintiffs point to Linens of the Week, which UNITE deems a probe, but which is in fact a public campaign.  Indeed, UNITE touts this campaign as a success story on its Web site. See UNITE HERE, http://www.unitehere.org/about/historyunite.asp (last visited Dec. 4, 2006).  Therefore, there is no reason to grant UNITE's request to redact the testimony about Linens of the Week.  See Pls.' Ex. 19 Dartayet-Rodriguez 49:7-11, 53:14-19, 54:17-24, 55:10-12, 56:17-23, 72:14-25.

In sum, we shall protect the following passages because they concern non-public probes:  Pls.' Ex. 1 Bennett Dep. 85:12-86:18; Pls.' Ex. 8 DeMay Dep. 66:7-67:23, Feb. 8, 2005; Pls.' Ex. 12 Chambers Dep. 63:22-64:7, Sept. 28, 2005; Pls.' Ex. 13 Coulter Dep. 30:10-31:4; Pls.' Ex. 22 Harden Dep. 18:3-5, 31:18-21, 37:24-40:2, Jan. 10, 2006; Pls.' Ex. 30 Coulter Dep. 171:10-172:12, 255:24-256:10, Oct. 27, 2005.

techniques, so the depositions are unlikely to contain surprising and potentially damaging revelations about UNITE's goals or methods.  Nevertheless, we examine the depositions to see if they reveal anything that today could actually disadvantage UNITE.

        To begin, UNITE wants to keep secret testimony about the percentage of its budget dedicated to organizing.  See, e.g., UNITE's Supp. Mem. 3 (identifying for continued sealing Bennett's Deposition 193:19-206:25).  We note, however, that UNITE proudly advertises precisely this information on its Web site:  "[o]ver 50% of the new Union's national budget will go toward organizing."  See UNITE HERE, http://www.unitehere.org/ presscenter/factsheet.asp (last visited Dec. 4, 2006);  see also id. at http://www.unitehere.org/presscenter/faq.asp (highlighting facts about UNITE and HERE, and stating as to UNITE: "Organizing is a top priority: More than 40% of UNITE's national budget goes toward organizing.") (last visited Dec. 4, 2006).  Redacting deposition testimony about the very information that UNITE publishes on the World Wide Web simply makes no sense.

        As to information about campaign procedures or tactics, the only testimony that warrants protection under this category is a conversation about the details of UNITE's Cintas database.  See Pls.' Ex. 16 Scimone Dep. 128:9-129:13, Aug. 23, 2005.  Our review of all the other deposition testimony that UNITE identifies reveals that UNITE is employing nothing more than the

techniques unions routinely use.[6]  UNITE's broad allegations of

_____

[6] We carefully reviewed all the deposition testimony in
question, and we offer herein a few examples typical of what
UNITE wants to keep sealed but whose sealing cannot be supported
under our jurisprudence.
     UNITE seeks to keep sealed a discussion about its efforts to
"agitate" workers because this is one of the "goals of the Cintas
campaign."  See UNITE's Supp. Mem. 3 (identifying for sealing
Bennett Deposition 245:25-250:23); see also Pls.' Ex. 1 Bennett
Dep. 247:11-13 (describing "agitate" as "to get [workers] focused
on and agitate around the issues that they care about").
Indeed, when asked if one of UNITE's goals "was to agitate
workers on the issues," Mr. Bennett replied, "Yes, as it is in
most organizing campaigns I have ever been involved in in my
entire career."  Pls.' Ex. 1 Bennett Dep. 247:2-6.  His testimony
highlights the absurdity of sealing such information.  "Agitating
workers" is what unionizing campaigns do, so UNITE's admission
that its Cintas campaign included such a goal cannot possibly
inflict on it a "clearly defined and serious injury."
     UNITE also wants to protect testimony about "training of
UNITE organizers to do home visits."  UNITE's Supp. Mem. 3
(identifying for continued sealing Raynor Deposition 55:18-
56:15); see also id. at 6 (requesting continued sealing for
Scimone Deposition 118:17-124:1, wherein he discusses
instructions concerning house calls).  Raynor testified that
organizers are trained "to not harass people" and because Cintas
workers "are afraid," the organizers help the workers "to
overcome that fear and tell us . . . what experiences they have
had at work and find out about the way they have been treated."
Pls.' Ex. 7 Raynor Dep. 55:19, 25, 56:1-4, Feb. 16, 2005; see
also UNITE's Mem. 6 (requesting continued sealing for Dartayet-
Rodriguez Deposition 20:18-22:18, wherein he testifies that the
purpose of house calling is to talk to workers about job issues,
tell them how to organize, and get them to sign cards and vote if
there is a union election).  UNITE has not specified how
information about such unsurprising, commonsense techniques could
possibly harm its work.  Indeed, we already know, because UNITE
stipulated to it, that "home visits allowed them to talk to
workers in a private setting away from the presence of Cintas
supervisors," Jt. Stip. of Facts ("Stip.") ¶ 28, and that
"finding potential legal claims against Cintas, in part through
home visits, was a component of the campaign," id. ¶ 21.
     There are other examples of testimony that do nothing more
than elaborate upon information discussed in our opinions.  For
example, our decision of August 30, 2006 mentions UNITE's
stipulation to obtaining some workers' contact information from
"discarded company lists," Stip. ¶ 29, yet UNITE asks us to
protect testimony that "UNITE organizers went through garbage
that Cintas had discarded" to find "names of workers."  Pls.' Ex.
11 Qadeer Dep. 139:24-25, 140:5, Feb. 24, 2006; see also UNITE's

harm with respect to this unremarkable information is devoid of the required "specific examples or articulated reasoning" and fails to meets it burden of showing a "need for continued secrecy."

Notably, UNITE has stipulated to using license plate retrieval "in organizing campaigns since at least the 1970s," Stip. ¶ 31, yet it now wants to redact discussions about its use of this technique in various campaigns.  Employers and the public already know that UNITE has used "tagging" for decades, and UNITE has not identified with specificity why mentions of this longstanding practice are now entitled to be kept secret.  Indeed, our holding that such actions violate the DPPA further militates against cloaking them in continued secrecy.

As to UNITE's personnel assignments, employers targeted in public campaigns know that UNITE organizers are working on these campaigns.  UNITE has not explained with any specificity how the information that any particular employee is or was

---

Supp. Mem. 4 (requesting that Qadeer Deposition 139:17-145:11 remain sealed).  Given UNITE's admission, no one can be surprised to read confirming testimony.

Our opinion also mentioned that some UNITE workers would get addresses by following workers home, so release of testimony on that tactic would not introduce previously unknown information into the public realm.  See, UNITE's Supp. Mem. 5 (seeking protection for Atkins Deposition 44:2-45:13, wherein deponent describes following people home from the workplace).

Finally, since UNITE has agreed to unseal its "Campaign Plan" (Exhibit I to the Stipulation of Facts), we fail to see what harm it will suffer if we unseal a conversation about the contents of that document.  See UNITE's Supp. Mem. 5 (seeking continued sealing of Coulter Deposition 122:16-125:18, 142:1-144:7, wherein Coulter answer questions about the "Campaign Plan").

assigned to a certain public campaign could damage its efforts. If a potentially targeted employer did not know that UNITE was conducting a "probe," then revealing that an employee is or was assigned to that "probe" might disadvantage UNITE.  However, we have already accounted for such a problem by redacting all the discussions of actual probes that UNITE identified.

Lastly, UNITE contends that conversations about the terms of its agreement with the Teamsters and their reasons for the unions' working together are internal union deliberations, and their release would work to the advantage of Cintas and other employers while harming UNITE.  The deposition testimony covers some very obvious and public matters -- such as (a) the unions' intent to use litigation to fight Cintas and to publicize how Cintas treats workers through press conferences and demonstrations, see Pls.' Ex. 7 Raynor Dep. 104:21-106:2; (b) their work to prepare mailings that they jointly sent to workers in several states, see Pls.' Ex. 18 Kane Dep. 103:10-104:1, Jan. 20, 2005; (c) the organizers' efforts to visit Cintas drivers on evenings and weekends when they were more likely to be at home, see id. at 107:4-13; and (d) some drivers' complaints about the visits, id. at 107:14-108:10.  Again, UNITE has not sufficiently explained how disclosure of such mundane information could harm its work.  The only testimony that we shall keep sealed with respect to the Teamsters involves testimony about economic consequences for the unions and details about a joint coordinating committee.  See Pls.' Ex. 7 Raynor Dep. 137:2-

140:25.

### III.  Conclusion

After painstakingly reviewing all the information that UNITE seeks to keep sealed, and applying the standards we must, we have identified what information merits continued sealing under the applicable jurisprudence.  We shall therefore grant plaintiffs' motion to unseal in part.  In an accompanying Order, we detail how the parties shall accomplish the continued sealing of the specified information.