IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH PICHLER, RUSSELL, CHRISTIAN,SETH NYE, HOLLY MARSTON, KEVIN QUINN, JOSE L. SABASTRO, THOMAS RILEY, AMY RILEY** and **RUSSELL DAUBERT**, On Behalf Of Themselves And All Others Similarly Situated, | : : : : : : : : : | CIVIL ACTION<br><br>NO. **04-CV-02841** |
| Plaintiffs, | : | |
| v. | : : | |
| **UNITE (UNION OF NEEDLETRADES, INDUSTRIAL & TEXTILE EMPLOYEES AFL-CIO),** Defendants. | : : : : : | |

## ORDER

**AND NOW**, this ____ day of June, 2009, upon consideration of Defendant UNITE's Motion, pursuant to Loc.R.Civ.P. 7.1(g), for Reconsideration of the Court's May 6, 2009 Order relating to the Court's determination of an award of liquidated damages, and Plaintiffs' Opposition thereto; it is hereby

ORDERED and DECREED, that UNITE's said Motion for Reconsideration is hereby DENIED in its entirety.

By the Court:

_____

Honorable Stewart Dalzell, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH PICHLER, RUSSELL, CHRISTIAN,SETH NYE, HOLLY MARSTON, KEVIN QUINN, JOSE L. SABASTRO, THOMAS RILEY, AMY RILEY** and **RUSSELL DAUBERT,** On Behalf Of Themselves And All Others Similarly Situated, | : : : : : : : : | CIVIL ACTION<br><br>NO. **04-CV-02841** |
| Plaintiffs,<br>v. | : : : : | |
| **UNITE (UNION OF NEEDLETRADES, INDUSTRIAL & TEXTILE EMPLOYEES AFL-CIO),**<br>Defendants. | : : : : : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
UNITE'S MOTION FOR RECONSIDERATION OF
THE COURT'S MAY 6, 2009 ORDER, TO DELETE PARAGRAPH "C"**

## I. INTRODUCTION

Plaintiffs, on behalf of themselves and the Plaintiff Class, by their undersigned attorneys, respectfully submit this Memorandum of Law in Opposition to UNITE's Motion For Reconsideration of the Court's May 6, 2009 Order holding that the Court (and not a jury) would decide whether to award additional statutory liquidated damages for multiple violations of the DPPA.

UNITE's Motion should be denied because UNITE has not identified any intervening law or newly discovered evidence, nor any manifest error of law or fact, to satisfy the legal requirements for reconsideration. Beyond that, UNITE's motion is plainly meritless. It is premised on a revisionary history of its own arguments to this Court, and a fundamental misunderstanding of both what "liquidated damages" are, and what juries in our legal system

do. It is also incompatible with the Third Circuit's affirmance of this Court's award of liquidated damages to the Plaintiffs on summary judgment.

*First*, it is clear that UNITE waived jury on this issue, by repeatedly and expressly requesting that this Court *exercise its discretion* and limit Plaintiffs' recovery to a single award of liquidated damages for multiple violations; UNITE never argued that this was an issue for the jury.

*Second*, UNITE's motion is substantively meritless because it misperceives and misstates both what liquidated damages are and what juries in our legal system do. Juries find facts, and if they find a violation of the law, they award damages based on the evidence. But in the case of liquidated damages (whether statutory or contractual), once a violation is found the issue of damages presents no factual issue for the jury. The very core of UNITE's argument — that a jury would be free to ignore the statutory minimum liquidated damages mandated by the statute — is an absurdity. Indeed, it is precluded by the Third Circuit's *affirmance* of this Court's summary judgment award of $2,500 to each named Plaintiff.

## II. FACTS

In its original Motion for Summary Judgment, UNITE expressly called upon this Court to exercise its "discretion to determine the amount of statutory damages, if any, successful Plaintiffs can obtained in a DPPA action." <u>See</u> Docket No.162, p.51. UNITE again called upon the Court (and not a jury) to weigh the evidence in its June 26, 2006 Sur-Reply Brief (Docket No.181), particularly at p.6 fn.2.

On September 20, 2006, this Court ordered that the parties brief certain issues, including whether the plaintiffs ought to be entitled to an award of liquidated damages for each time UNITE violated the DPPA with respect to their motor vehicle information. In its

October 5, 2006 Supplemental Memorandum in response, UNITE again made clear that it was requesting the Court to exercise its discretion based on the facts before it.  For example, UNITE argued that "even if the Court finds the DPPA technically permits separate statutory damages awards to all co-owners ..., *the Court should exercise its discretion* not to award such multiple statutory damages in this case." See Docket No. 195, p.5 (heading "**B**") [emphasis added]. See also, Id., p.8.  UNITE went on to argue that the Court should not award additional liquidated damages for mailings that certain Plaintiffs received because it would be "inappropriate" to do so under the facts as described by UNITE. Id., p.14.  In other words, UNITE did not argue that it should be up to the jury to determine whether or not multiple violations would result in multiple awards, but expressly asked the *Court* to make that determination.[1]

On appeal to the Third Circuit, UNITE again argued that this Court properly exercised its discretion in declining to award additional damages for multiple violations under a consideration of the facts before it.  See UNITE Opposition Brief [Exhibit A], pp. 59-63, 68-69.  It is true that UNITE also argued that "if the DPPA does not grant the judge discretion to award [liquidated] damages, UNITE has a 'right to have a jury determine the amount of statutory damages, if any 'Plaintiff should receive, either $0 or $2,500.'" Id., p.65 (*citing* Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 353 (1998)).  In response to this, Plaintiffs pointed out in their Response And Reply Brief that UNITE had not sought a jury trial on the issue of compensatory damages:  "the parties waived jury with respect to statutory damages. *Both parties expressly sought relief from the district judge*, and never sought a jury

---

[1]  Although UNITE also argued that there were issues of fact that precluded summary judgment, these issues pertained to whether additional violations had actually occurred (for example, whether mailings received by Plaintiffs really were additional violations of the DPPA), and not as to whether statutory damages should be awarded for each violation proved.

verdict on statutory damages.  Plaintiffs preserved their right to jury only with respect to punitive damages. Further, UNITE never raised this as an issue on appeal." Pltfs.' Response And Reply Brief [Exhibit B], at p.57 [emphasis added].  As shown by UNITE's own briefing outlined above, this was entirely accurate.[2]

UNITE's assertion (Moving Memo., p.5), that it could not respond to this alleged factual "misstatement" because it was contained within the "reply" portion of Plaintiffs' Brief is meritless.  UNITE filed a subsequent brief in response to Plaintiffs' Brief, and was thus fully capable, if not duty bound, to correct any factual representation that UNITE considered incorrect.  Furthermore, in response to the Third Circuit's own discussion of the discretion of the Court to award multiple damages for multiple violations, including its observation that the parties had not preserved a right to jury on that issue (see Pichler, 542 F.3d 380, at 392n.12, 393-94 (2008)), UNITE might still have petitioned that Court to amend or correct its opinion. Indeed, UNITE did petition for reargument, but never raised this issue.

## III.   ARGUMENT

### A.    UNITE Has Not Satisfied The Strict Standards For Reconsideration

Motions for reconsideration, while addressed to the sound discretion of the Court, should be granted sparingly. Armstrong v. Reisman, No. 99CV4188, 2000 U.S. Dist. LEXIS 3119 (E.D. Pa., March 3, 2000), at *9.  "The granting of a motion to reconsider is an extraordinary remedy and the Court should not do so when the motion is merely a re-styling or rehash of the issues previously presented."  Hart v. U.S., No. 00-2158, 2000 U.S. Dist.

---

[2]  Plaintiffs also pointed out that UNITE's assertion that a jury could determine that Plaintiff could receive "$0" for a violation, despite the statutorily mandated minimum liquidated damages, was substantively without merit.  UNITE's assertion was not taken seriously by the Third Circuit, which ignored it and affirmed this Court's award of liquidated damages on summary judgment. .

LEXIS 17976 (E.D. Pa., Nov. 20, 2000), at *2 (¶c), aff'd w/out op., 275 F.3d 35 (3d Cir.

2001).[3]  Instead, reconsideration should be granted "only if" the moving party can

> "show[] at least one of the following grounds: (1) an intervening change in the
> controlling law; (2) the availability of new evidence not available when the
> court [rendered its decision]; or (3) the need to correct a clear error of law or
> fact or to prevent manifest injustice."

Burkhart v. Allstate Insur. Co., 2005 WL 856908 (E.D. Pa. Apr. 12, 2005), at ¶(f), *quoting*

Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).[4]  However, none of these

conditions is present here.

### B.   UNITE Waived Jury On The Issue Of Cumulative Awards

As shown above, UNITE clearly waived a jury trial on the issue of whether or not

cumulative liquidated damages should be awarded for multiple DPPA violations, by expressly

asking this Court to exercise its "discretion" on that issue.  Moreover, UNITE already tried to

argue to the Third Circuit that if Plaintiffs were entitled to a jury trial on punitive damages

(which Plaintiffs had requested), then UNITE should be entitled to a jury on cumulative

awards (which no party had requested).  The Third Circuit ignored this argument, and UNITE

has presented no reason why this Court should agree with it when the Third Circuit did not.

### C.   UNITE's Motion Is Substantively Meritless

Beyond the issue of waiver, UNITE's motion lacks substantive merit, because it is

premised on a misunderstanding of the statute, the nature of liquidated damages, and the role

of the jury in deciding cases.  For the sake of clarity, there are only two issues to be decided

---

[3]  Accord, Thompson v. Beard, 2006 U.S. Dist. LEXIS 66624 (E.D. Pa., Sept. 18, 2006), at *6-7; Great
Western Funding, Inc. v. Mendelson, 158 F.R.D. 339, 349 (E.D. Pa. 1994), aff'd w/out op., 68 F.3d
456 (3d Cir. 1995).

[4]  Accord, Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); Thompson, supra, at *3.

with respect to cumulative awards. The first is whether or not multiple violations exist — *that is*, how many times did UNITE use a plaintiff's motor vehicle records for an improper purpose? Waiver of jury aside, this would ordinarily be a factual determination for the jury — just as it would be for the jury to decide whether a contract with a liquidated damages clause had been breached — *unless* the facts of the breach are undisputed, leaving no jury issue.[5]

The next question would be whether to award statutory liquidated damages for each violation. UNITE's argument that a jury should decide this violates the very notion of what liquidated damages are, misconstrues the role of the jury, and is unsupported by any caselaw.

Ordinarily, once the fact-finder finds a violation, it must also award appropriate compensation. In most cases, it is up to the fact-finder to weigh the evidence to determine what compensation is appropriate. However, that is not the case where liquidated damages are involved: once a breach is found, there is no issue for the fact-finder, because the liquidated damages provision determines what damages are to be awarded; thus, there is no issue for the jury. E.g., Penna. Dept. of Transportation v. Mitchell, 517 Pa. 203, 213-14, 535 A.2d 581, 586-87 (1987).

The DPPA changes this only slightly, by granting to the Court discretion "to fashion an award it deems appropriate." Pichler, 542 F.3d at 394. In the face of the statutory provision for liquidated damages, this "discretion to fashion an award" the Court "deems appropriate" can only be based on equitable principles — which juries are neither competent nor empowered to apply. This is consistent with the very cases that UNITE purports to rely on

---

[5] For example, in the case at Bar, UNITE's House Call Sheets would establish how many times UNITE personnel visited class members whose contact information had been illegally obtained.

677119_2

(Moving Memo., p.9):  In all the cases relied on UNITE, it was the *Court*, not a jury, that exercised discretion over the award.[6]

The flaw in UNITE's Motion is highlighted, moreover, by its repeat of the argument that it unsuccessfully made to the Third Circuit, namely that the jury "would have a choice of damages to award: it may award a plaintiff $2,500, it may award a plaintiff no liquidated damages, or it may award a plaintiff more than $2,500." (Moving Memo., p.8)  UNITE starkly clarifies this argument by stating that "the jury would only have to decide between awarding $2,500 or awarding no damages." (Id., fn.10).  This is the nub of UNITE's Motion:  it wants to throw the statutorily mandated minimum liquidated damages provision right out of the DPPA, and replace it instead with a jury's whim.

UNITE's assertion that a jury would not have to award any damages at all is contrary to the statute that provides for minimum liquidated damages, and is contrary to the Third Circuit's *affirmance* of this Court's award of such damages *on summary judgment*.  It is even contrary to the very case UNITE relies upon, Feltner v. Columbia Pictures Television, 523 U.S. 340, 353 (1998).  In Feltner, the Supreme Court held that where the Copyright Act provided for awarding statutory compensatory damages within a specified range "as the court considers just", that determination was to be made by the jury.  Nothing in Feltner supports UNITE's argument that the jury would be empowered to go *outside* the statutorily mandated range of damages for each violation ($500 to $20,000 for copyright violations; $2,500 or

---

[6]  Because those cases dealt with statutes with materially different wording, they do not otherwise support UNITE's argument that the Court is free not to award any damages at all.

677119_2

actual damages if greater for DPPA violations) and award nothing.[7]

IV.     **CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that UNITE's Motion for Reconsideration should be denied in its entirety.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

Dated:  June 4, 2009

By_____
         Paul R. Rosen, Esquire
         David B. Picker, Esquire
1635 Market Street - 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
*Attorneys for Plaintiffs*

---

[7]  Because 18 U.S.C. §2724(b) provides that the Court "may award" the four categories of relief set forth thereafter, it has perhaps been assumed that the Court is not required to award any relief. That is not so.  Because the four categories of relief provided for in section 2724(b)(1)–(4) are stated in the *conjunctive*, if the section provided that the Court "shall award," the result would be that the Court would *have* to award compensatory damages *and* punitive damages *and* injunctive relief *and* attorneys' fees.  Of course, that would be an untenable result.  Thus, the use of the word "may": it makes clear that those remedies provided in section 2724(b)(2)–(4) that traditionally are within the court's discretion are not mandated; it does not, however, obviate the traditional requirement that the victim of a tort is entitled to compensation — here, liquidated damages or actual damages if greater.

677119_2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalties of perjury that on this 4th day of **June**,

2009, I served Plaintiffs' Memorandum of Law In Opposition to Defendant's Motion

For Reconsideration on all parties, by e-filing and by causing true and correct copies thereof

to be sent to counsel, by postage pre-paid U.S. Mail, as follows:

Lawrence T. Hoyle, Jr., Esquire
Arlene Fickler, Esquire
Arleigh P. Helfer III, Esquire
John R. Timmer, Esquire
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19107

Laurence M. Goodman, Esquire
Mark Featherman, Esquire
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
*Attorneys For Defendant UNITE*

Date:  June 4, 2009

_____
David Picker, Esquire

677119_1

# EXHIBIT "A"

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

No. 06-4303
No. 06-4522
No. 06-4721

ELIZABETH PICHLER, RUSSELL CHRISTIAN, SETH NYE,
HOLLY MARSTON, KEVIN QUINN, JOSE SABASTRO,
THOMAS RILEY, AMY RILEY, and RUSSELL DAUBERT, on
behalf of themselves and those similarly situated
*Appellants/Cross-Appellees*

v.

UNITE (UNION OF NEEDLETRADES,
INDUSTRIAL & TEXTILE EMPLOYEES (AFL-CIO)),
*Appellee/Cross-Appellant*

## PRINCIPAL AND RESPONSE BRIEF OF
## APPELLEE/CROSS-APPELLANT UNITE HERE!

Appeal From October 17, 2006 Judgment of the District Court
in *Pichler, et al. v. UNITE, et al.*, No. 04-CV-2841-SD,
United States District Court for the Eastern District of Pennsylvania

Dated: March 20, 2007

Lawrence T. Hoyle, Jr.
Arlene Fickler
Arleigh P. Helfer III
John R. Timmer
HOYLE, FICKLER, HERSCHEL &
  MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 981-5700

*Attorneys for Appellee/Cross-Appellant UNITE HERE!*

whether to award damages.  Second, the Seventh Amendment right to jury trial is not absolute: a court can, and did in this matter, determine that the punitive damages issue not need go to the jury.

### 3.    The District Court Properly Exercised its Discretion Under the DPPA in Declining to Award Punitive Damages

The word "may" in the DPPA's "Remedies" provision gives the court discretion whether or not to award damages -- both compensatory and punitive. As the Eleventh Circuit held in *Kehoe*, 421 F.3d at 1216, "the word 'may' [in the DPPA] suggests that the award of *any* damages is discretionary."  (emphasis added).  Put differently, in fashioning an appropriate remedy the district court has the option to award actual damages and punitive damages. *See id.* at 1217.  Here that plain meaning of the statute -- that the court has discretion in awarding damages -- should not be overturned. *See Ron Pair Enters.*, 489 U.S. at 242.

The vast majority of courts that have considered this issue have reached the same conclusion in interpreting the compensatory damages provision of the Wiretap Act, which provides that "the court *may* assess as damages ... the greater of- (A) the sum of the actual damages ... and any profits made by the violator ...; or (B) statutory damages ... ." 18 U.S.C. §2520(c)(2) (emphasis added). *See, e.g., DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004) (holding that an award of damages under §2520(c)(2) is discretionary); *Nalley v. Nalley*, 53 F.3d

649, 652 (4th Cir. 1995) (same); *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999) (same); *Reynolds v. Spears*, 93 F.3d 428, 434 (8th Cir. 1996) (same).

Because the court's discretion to award liquidated damages under the DPPA also applies to punitive damages, *see Kehoe*, 421 F.3d at 1216, Plaintiffs' jury trial argument is illogical. If the judge has discretion to award or not award punitive damages and he determines that they are not warranted, a jury trial would accomplish nothing. Plaintiffs' contention that a jury trial is required to determine whether punitive damages may be awarded at all, as contrasted with deciding the amount of punitive damages to be awarded after the judge determines that they are properly recoverable in a given case, cannot be reconciled with the DPPA's express language vesting the court with discretion to award damages.

Plaintiffs' argument that "it is not clear whether Congress meant 'court' to refer to the judge and jury together, or the judge alone" is unavailing. (Appellants' Br. at 34.) The discretion inherently vested in the word "may" is not reconcilable with an interpretation of "court" that includes the jury. Traditionally, juries do not exercise discretion; they find facts and apply law as it is explained to them. In addition, Section 2724(b) vests the court with discretion to award not only actual and punitive damages, but also attorneys' fees and equitable relief. These latter remedies are traditionally within the province of the judge, not the jury. *See*

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998). Therefore, Section 2724(b)'s reference to the "court" is to the judge.

Here, the District Court's decision to deny punitive damages was supported by the facts. Punitive damages should only be imposed to achieve retribution and deterrence. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

As to deterrence, UNITE stopped obtaining MVR information for the Cintas campaign in June 2004, when this litigation commenced. UNITE subsequently directed its staff to cease obtaining MVR information in any campaign. (App.1516-18 (Garren Dec.¶2, Exh.A).) Because UNITE has stopped "tagging," and because "further license plate retrievals will result in costly damage awards," the District Court properly concluded it had "achieve[d] deterrence without imposing punitive damages." (App.148 (457 F.Supp.2d at 532).)

As to retribution, Section 2724(b)(2) conditions an award of punitive damages on a showing of willful or reckless disregard of the DPPA. As discussed above, UNITE has demonstrated that unions had a long-standing practice of using MVR information in organizing campaigns and that this practice was specifically condoned by the Supreme Court and the NLRB. (*See* page 44, *supra.*) That UNITE continued this practice after the DPPA's enactment does not reflect willful or reckless disregard of the DPPA; it reflects UNITE's reasonable belief that this practice was permitted. (App.946 (Chambers Dec.¶8).) Thus, as the District Court

found, UNITE had "argued throughout this litigation that its decades-old practice of license plate retrieval is permissible and that its activities fall within the DPPA's exceptions." (App.147 (457 F.Supp.2d at 532).)

Moreover, UNITE never engaged in any conduct that could remotely warrant the imposition of punitive damages under the DPPA.   The union representatives who contacted Plaintiffs were polite and cooperative. (App.237-38 (Jt.Stip.¶¶51, 53-58).)  UNITE was not engaged in the type of conduct that led to the DPPA's passage as part of the Violent Crime Control and Law Enforcement Act of 1994: stalking.   139 Cong. Rec. E2747-02 (remarks of Rep. Moran) and S15745-01 at *S15761-66 (remarks of Senator Boxer).

Furthermore, if the Court affirms the liquidated damages award, such an award is tantamount to an award of punitive damages in the absence of evidence of actual damages.  Without evidence of a pecuniary loss, the award of $2,500 would not be compensatory; rather, the liquidated damages award would punish UNITE's violation of the DPPA. *See Blum v. Witco Chem. Corp.*, 829 F.2d 367, 382 (3d Cir. 1987).  As the District Court found, punitive damages are "unnecessary" because "UNITE will be amply punished by the multi-million-dollar award [for class statutory damages and 'considerable' attorneys' fees and costs] it will owe

plaintiffs and the class if they prevail on appeal."[7]  (App.148-49 (457 F.Supp.2d at

532).)

For all these reasons, the District Court did not abuse its discretion by

refusing to award punitive damages.

### 4. The District Court Properly Determined That There Was No Issue of Fact for the Jury

The Seventh Amendment does not compel a different result.  The

constitutional right to jury trial is "subject to the condition, fundamental in the

conduct of civil actions, that the court may withdraw a case from the jury and

direct a verdict, according to the law if the evidence is uncontradicted and raises

only a question of law." *Tull v. United States*, 481 U.S. 412, 419 (1987).  This

standard is applicable to the court's review of claims for punitive damages.

*Charles Jacquin Et Cie, Inc. v. Destileria Serrales, Inc.*, 921 F.2d 467, 471 (3d Cir.

1990).  Before a civil case goes to the jury, there is a preliminary question for the

judge, not whether there is literally no evidence, but whether there is any upon

which a jury could properly find a verdict for the plaintiff, upon whom the onus of

proof is placed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The

---

[7] Where, as here, Plaintiffs have not alleged or sought actual damages, an award of
punitive damages would violate the Fourteenth Amendment's due process clause
which requires that punitive damages reasonably relate to actual damages. *See
Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 236 (3d Cir. 2005);
*see also Gore v. BMW*, 517 U.S. 559, 580 (1996).

mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. *Id.* at 251. As discussed above, the District Court properly determined that there was insufficient evidence to support a verdict for the Plaintiffs on punitive damages.

Although the District Court was within its discretion in denying punitive damages, should this Court determine that Plaintiffs are entitled to a jury trial on punitive damages, it must also reverse the determination that each plaintiff is entitled to $2,500 in liquidated damages. The Supreme Court has held that the determination of damages awarded for breach of a statute is a jury issue. *See Feltner*, 523 U.S. at 353. ("[T]he right to a jury trial includes the right to have a jury determine the amount of statutory damages, if any...."). If, as Plaintiffs contend, the District Court did not have discretion to deny punitive damages, it did not have discretion to award liquidated damages.

In *Feltner*, the jury had the right to determine the amount of statutory damages under the Copyright Act, which provided for statutory damages "in a sum of not less than $500 or more than $20,000...." 523 U.S. at 343, interpreting 17 U.S.C. §504(c). As in *Feltner*, the jury here would have a choice of damages to award, assuming violation. The jury may award *either* $2,500 in liquidated damages *or* no liquidated damages if it determines that the damages were *de*

*minimis. See Brown,* 371 F.3d at 818 (a court has discretion to refuse to award liquidated damages for breach of Wiretap Act where plaintiff suffered *de minimis* damages); *see also* other authorities cited at pages 59-60 *supra.* Although, under the DPPA the jury does not have the range of liquidated damage amounts under the Copyright Act, the jury still has the ability to choose whether to award $2,500 or $0. If the DPPA does not grant the judge discretion to award damages, UNITE has a "right to have a jury determine the amount of statutory damages, if any" Plaintiffs should receive, either $0 or $2,500. *Feltner,* 523 U.S. at 353.

### B.   The District Court Properly Denied Multiple Liquidated Damage Awards.

#### 1.   Standard of Review

There is plenary review of the court's legal conclusion that it has discretion and its exercise of discretion is reviewed for abuse. *See, e.g., IFC Interconsult, AG,* 438 F.3d at 305; *County of Morris,* 273 F.3d at 535.

#### 2.   Introduction

Plaintiffs' argument that they are "entitled" to separate awards of $2,500 for each and every obtainment, disclosure and use of a Plaintiff's personal information by UNITE similarly misconstrues the DPPA. First, the DPPA's express language and structure make clear that Congress did not intend to make multiple liquidated damage awards available to a single plaintiff, who may recover actual damages if they exceed the total liquidated damages amount of $2,500. Second, even if

multiple awards of liquidated damages to a single plaintiff were permitted, the DPPA provides that a court "may" award such damages, as discussed *supra*. As such, Plaintiffs are not "entitled" to any award; any award is solely discretionary with the court.

### 3.  The DPPA's Express Language And Structure Do Not Contemplate Multiple Awards Of Liquidated Damages

The DPPA's civil action provision predicates liability on any obtainment, disclosure, or use of MVR information for an impermissible purpose. Although there can be multiple violations concerning a single plaintiff, the DPPA only provides a single cause of action to that plaintiff.[8]  *See* 18 U.S.C. §2724(a).  In other words, section 2724(a) sets forth a liability threshold.  Once a plaintiff crosses that threshold, whether by virtue of proving a single violation or multiple violations, the focus shifts to the remedies provisions in section 2724(b).  That remedies provision clearly states that a plaintiff may, in the court's discretion, recover actual damages, but not less than liquidated damages of $2,500.  18 U.S.C. §2724(b)(1).  Thus, the liquidated damages award of $2,500 is available when a

---

[8] Plaintiffs' discussion of *Parus v. Cator*, No. 05-C-0063, 2005 WL 2240955 (E.D.Wis. Sept. 14, 2005), misses the point.  (Appellants' Br. at 55-56.)  While there can be multiple violations of the DPPA, nothing in *Parus* suggests that it would be proper to award a plaintiff with *de minimis* actual damages multiple awards of liquidated damages.

plaintiff's total actual damages for *all* acts of obtainment, disclosure, and use are less than $2,500.

This reading has the force of common sense. It is difficult to imagine any situation in which one would obtain MVR information for some purpose other than to use it. Thus, in almost every case involving an impermissible purpose, there would be at least two acts in violation of the DPPA. On Plaintiffs' reading, the effective minimum liquidated damages award would be $5,000 in nearly every case. To extend Plaintiffs' logic further, a course of repeated impermissible but otherwise innocuous uses of the information could create liability out of all proportion to the conduct. For example, if a party obtained MVR information to send monthly mailings of advertisements over a period of a year, Plaintiffs' reading would require an award of $32,500 (one obtainment and twelve uses times $2,500) to the recipient. This cannot be what Congress intended.[9] To be sure, as the DPPA is written, a plaintiff is not without recourse if there are multiple harmful violations, as opposed to technical violations, of the DPPA: a plaintiff may recover actual damages without limitation.

---

[9] Plaintiffs' reading would yield more staggering results in light of their position that every person who lives at an address on a motor vehicle record is a proper plaintiff, presumably entitled to recover separate awards for each and every violation. (*See* Appellants' Br. at 49-54.)

Moreover, Congress knows how to signal its intent through express language when it wants statutory damages to be available on a *per violation* basis. *See, e.g.*, 18 U.S.C.§§248 and 2520(c)(2)(B); 26 U.S.C. §7431; 47 U.S.C. §§227(b)(3)(B), 338(i)(7), and 551; and 50 U.S.C. §1810. The fact that such language is not included here is indicative of its intent not to grant liquidated damages on a per violation basis.

4.   **Assuming *Arguendo* That Multiple Awards Are Permissible, The District Court Properly Declined To Award More Than $2,500 To Any Plaintiff**

Congress gave courts the authority and discretion to refuse to award damages under the DPPA when they are not warranted. (*See* pages 59-61, *supra.*) This is consistent with the Congressional grant of discretion in a similar privacy statute. *See Reynolds v. Spears*, 857 F. Supp. 1341, 1348 (W.D.Ark. 1994) ("It is not reasonable to expect Congress to enumerate in the [Wiretap Act] every possible situation in which a lesser amount of damages would be appropriate. Instead, Congress apparently addressed this issue by inserting the word 'may' to give federal district courts the discretion to either award the [statutory damages] or not to award any damages."). Most courts have declined to award damages for *de minimis* violations of the Wiretap Act. *See Goodspeed v. Harman*, 39 F.Supp.2d 787, 791 (N.D.Tex. 1999). If courts have discretion to deny a damages award to plaintiffs who suffer *de minimis* actual damages, the District Court was certainly

within its discretion to deny *multiple* awards to plaintiffs who suffered no actual damages. Congress' failure to include an explicit provision against multiple awards does not compel a contrary result. (*See* Appellants' Br. at 59.)

In addition, the District Court appropriately decided this issue on summary judgment. *Tull v. United States*, 481 U.S. at 419. Plaintiffs are not asserting that they suffered any actual damages. Although Plaintiffs argue that the Court failed to consider evidence that a Plaintiff asked a union representative to leave and the representative returned the following week, and that a union representative visited a Plaintiff who "lives alone" (Appellants' Br. at 61-62), such innocuous circumstances do not raise a genuine issue of fact that would disturb the court's decision.

Furthermore, the DPPA provides that a plaintiff who suffered more than $2,500 in actual damages can recover that amount. As no Plaintiff has alleged any actual damages, much less actual damages greater than $2,500, the District Court rightfully exercised its discretion to find that Plaintiffs did not merit an award greater than $2,500. Therefore, the District Court did not abuse its discretion by determining on summary judgment not to award multiple damage awards.[10]

---

[10] However, the District Court did abuse its discretion in awarding separate liquidated damages to co-registrants of a single motor vehicle (App.140-41 (457 F.Supp.2d at 528-29)) inasmuch as their information was obtained only once and effectively used as if there were only one owner of the automobile.

# EXHIBIT "B"

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT



### Docket Nos. 06-4303, 06-4522, 06-4721

---

**ELIZABETH PICHLER, RUSSELL CHRISTIAN, SETH NYE,**          :
**HOLLY MARSTON, KEVIN QUINN, JOSE L. SABASTO,**          :
**DEBORAH A. SABASTRO, THOMAS RILEY, AMY RILEY,**          :
**RUSSELL DAUBERT, and CARRI DAUBERT,** on behalf of          :
themselves and those similarly situated,          :
          :
                        **Plaintiffs-Appellants-Cross-Respondents,** :
    v.          :
          :
**UNITE (UNION OF NEEDLETRADES, INDUSTRIAL &**          :
**TEXTILE EMPLOYEES AFL- CIO),**          :
                 **Defendant-Appellee-Cross-Appellant.** :

---

## RESPONSE AND REPLY BRIEF
## OF PLAINTIFFS-APPELLANTS-RESPONDENTS
## IN OPPOSITION TO CROSS-APPEAL OF DEFENDANT UNITE;
## AND IN FURTHER SUPPORT OF PLAINTIFFS' MAIN APPEAL

---

Appeal From Part of the Summary Judgment of the United States District
Court For the Eastern District of Pennsylvania, Entered October 17, 2006;
Together with Order entered May 30, 2005, Dismissing Certain Plaintiffs

---

Dated:  April 26, 2007

Paul R. Rosen, Esquire
David B. Picker, Esquire
**SPECTOR GADON & ROSEN, P.C.**
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
*Attorneys For Plaintiffs-Appellants-*
*Cross-Respondents*

343775-2

ELIZABETH PICHLER, RUSSELL CHRISTIAN, :
SETH NYE, HOLLY MARSTON, KEVIN QUINN, :
JOSE SABASTRO, THOMAS RILEY, AMY RILEY, :
and RUSSELL DAUBERT, :
   Plaintiffs-Appellants, :  No. 06-4303
   v. :
BRUCE RAYNOR :
   Defendant-Appellee. :
and :
UNITE (UNION OF NEEDLETRADES, INDUSTRIAL :
& TEXTILE EMPLOYEES (AFL-CIO)) :

ELIZABETH PICHLER, RUSSELL CHRISTIAN, :
SETH NYE,HOLLY MARSTON, KEVIN QUINN, :
JOSE L. SABASTO, DEBORAH A. SABASTRO, :
THOMAS RILEY, AMY RILEY, RUSSELL :
DAUBERT, and CARRI DAUBERT, :
on behalf of themselves and those similarly situated, :  No. 06-4522
   Plaintiffs-Cross-Respondents, :
   v. :
UNITE (UNION OF NEEDLETRADES, INDUSTRIAL :
& TEXTILE EMPLOYEES AFL-CIO)), :
   Defendant-Cross-Appellant. :

ELIZABETH PICHLER, RUSSELL CHRISTIAN, :
SETH NYE, HOLLY MARSTON, KEVIN QUINN, :
JOSE SABASTRO, DEBORAH SABASTRO, :
THOMAS RILEY, AMY RILEY, CARRI DAUBERT :
and RUSSELL DAUBERT, :  No. 06-4721
   Plaintiffs-Appellants, :
   v. :
UNITE (UNION OF NEEDLETRADES, INDUSTRIAL :
& TEXTILE EMPLOYEES (AFL-CIO)) :
   Defendant-Appellee :

343775-2

fact that "Before it was amended in 1986, the Wiretap Act stated that '[a]ny person whose communication is intercepted ... *shall* ... be entitled to recover actual damages ... .' 18 U.S.C. § 2520 (emphasis added). Congress then changed the mandatory term 'shall' to the term 'may,' which suggests that Congress intended an award of damages to be discretionary." <u>DIRECTV, Inc. v. Brown</u>, 371 F.3d at 817-18. In addition, the court noted that a separate provision providing for lesser damages continued to use the mandatory "shall". <u>Id.</u>, at 817, *citing* 18 U.S.C. §2520(c)(1). Because of the contrast between these two provisions, and because of the express change of language, the courts concluded that Congress intended the court to exercise discretion over the remedy.

This language and history are absent from the DPPA. Section 2724(a) provides that a person acting in a manner not permitted by the statute "*shall* be liable to the individual to whom the information pertains." [Emphasis added] The use of the word "shall" appears mandatory, and there is no further limitation, as there is in the Wiretap Act, that "such relief" be "appropriate".[21]

The structure of the DPPA further distinguishes it from the Wiretap Act. As noted, the DPPA severely restricts the use of motor vehicle information for commercial marketing and surveys, activities not likely to lead to any tangible harm. There is no indication that Congress intended to give the Court discretion

---

[21] The only requirement that relief be "appropriate" is with respect to awarding "such other preliminary and equitable relief ..." 18 U.S.C. §2724(b)(4).

56

not to provide relief for such violations.  Indeed, it may well be questioned whether a court can properly refuse to grant what Congress has *mandated* as a minimum recovery.   In any case, both the Seventh Amendment and the DPPA's language and structure establish that the cases construing the Wiretap Act to allow discretion to not grant relief have no application to the DPPA or the case at Bar.

Nevertheless, UNITE goes on to argue (Br. at 64-65) that if a jury should decide the punitive damages issue, then the award of statutory damages should also be reversed and remanded to the jury with instructions that it may award either $2,500 or nothing for each violation.   There are two fatal flaws in this argument.

*First*, the parties waived jury with respect to statutory damages.  Both parties expressly sought relief from the District Judge, and never sought a jury verdict on statutory damages.   Plaintiffs preserved their right to jury only with respect to punitive damages.  Further, UNITE never raised this as an issue on appeal.

*Second*, nothing in the DPPA supports the view that the jury (or judge) has discretion not to award the statutory-minimum liquidated damages — any more than a jury in a contract case can find a breach and then not award the liquidated damages provided therein;   indeed, once a breach is found and the liquidated damages provision held enforceable, the issue of liquidated damages would not even be submitted to the jury. E.g., Penna. Dept. of Transportation v. Mitchell, 517 Pa. 203, 213-14, 535 A.2d 581, 586-87 (1987).  Nor does anything in Feltner v.

Columbia Pictures Television, 523 U.S. 340, 353 (1998), on which UNITE relies, support UNITE's implication that the jury would be empowered to go outside the statutory mandated range of damages and award nothing.

### 3.  Punitive Damages Would Be Both Constitutional And Appropriate

Finally, UNITE incorrectly argues (Br. at 63n.) that an award of punitive damages would violate the Fourteenth Amendment[22] Due Process Clause, in the absence of "actual harm."  This argument is erroneous for several reasons.  *First*, cases have held that punitive damages may be awarded even in the absence of compensatory damages. E.g., Alexander v. Riga, 208 F.3d 419, 430-34 (3d Cir. 2000), cert. denied, 531 U.S. 1069 (2001); Cush-Crawford v. Adchem Corp., 271 F.3d 352, 358 (2d Cir. 2001).  *Second*, and equally important, as noted above (pp. 42–43) and acknowledged even by UNITE (Br. at 55-56), "liquidated damages" *are compensatory*;  in the case of the DPPA, they represent Congress's best estimate of compensable harm to a plaintiff's privacy interests.

Ironically, UNITE relies on Willow Inn, Inc. v. Public Service Mutual Insur. Co., 399 F.3d 224 (3d Cir. 2005), even though it actually helps Plaintiffs.  Willow Inn affirmed an award of punitive damages in the amount of $150,000, in an insurance bad faith action, where the compensatory award was only $2,000.  In

---

[22] UNITE presumably means the Fifth Amendment.

336282-6